586 P.2d 1053

**CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE,
Plaintiff-Appellant,**

v.

**Herman W. BERGAN d/b/a Commercial Tire Supply, Defendant-Respondent.**

No. 12743.

Supreme Court of Idaho.

Nov. 17, 1978.

Stephen B. McCrea, Coeur d'Alene, for plaintiff-appellant.

H. S. Sanderson, Coeur d'Alene, for defendant-respondent.

**DONALDSON, Justice.**

Plaintiff-appellant Consolidated Freightways initially instituted suit to recover certain freight charges from the defendant-respondent, Herman W. Bergan, dba Commercial Tire Supply. Upon stipulated facts and the parties' briefs, the magistrate court held for the defendant in a memorandum decision. The plaintiff appealed to district court which reversed and remanded the case for evidence pertaining to the intent of the parties. From the district court's order remanding for further evidence, plaintiff appeals.

The stipulated facts are as follows:

Plaintiff, Consolidated Freightways, is a Delaware Corporation licensed to do business in the State of Idaho and engaged in the business of transporting goods in interstate commerce. Defendant Bergan is the owner of Commercial Tire Supply, Coeur d'Alene, Idaho, a sole proprietor engaged in wholesale and retail tire sales.

Defendant engaged the plaintiff as a carrier on or about February 25, 1975 to transport a quantity of used tires from South San Francisco, California, to the consignee, Firestone Retread Shops, in Spokane, Washington.

The shipment was to be carried by truck, subject to the published tariffs in effect on February 25, 1975, the day when the tires were received by the carrier. The proper charge, given the weight and quantity of tires carried and the number of vehicles used, was $804.

Plaintiff made delivery to the consignee on February 26, 1975 and February 28, 1975. The consignee accepted delivery on both dates, but did not pay plaintiff freight charges on the shipments. On February 26, 1975, the plaintiff mailed a bill to defendant for the sum of $804. The defendant also refused to pay the charges.

In connection with this transaction the shipper/defendant signed a straight bill of lading.[1] He also initialed the line under the standard "non-recourse clause," which read:

---

1. A bill in which it is stated that the goods are consigned or destined to a specified person is a straight bill. 49 U.S.C. § 82.

Subject to section 7 of the conditions, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement:

The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

_____(initialed)_____

Signature of Consignor

A further provision of the bill of lading stated:

FREIGHT CHARGES:

| Freight prepaid except when box at right is checked | Check box if charges are to be collect ☐ |
|---|---|

The defendant did not check or mark that box.

The issue on appeal is whether a carrier of goods in interstate commerce (Consolidated Freightways) can recover freight charges from the shipper/consignor (Bergan) pursuant to a provision in the straight bill of lading that the goods were shipped by the consignor on a prepaid basis, but where the consignor executed the non-recourse clause in the bill of lading and in reliance on that clause refused to make payments after the carrier made delivery to the consignee. The cost of the goods and the consignee's reception of those goods are not in issue.

Consolidated Freightways contends that the consignor's execution of the bill of lading without indication that the goods were to be shipped on a "collect" basis amounts to a guarantee that the consignor will pay the freight charges. Bergan, on the other hand, contends that when he filled out and signed the straight bill of lading form supplied by the plaintiff, he signed only the "non-recourse" provision. By virtue of signing that provision only, the defendant concludes that he cannot be liable for the freight charges because the carrier wrongfully delivered the shipments to the consignee without collecting a freight charge contrary to that "non-recourse" provision.

■ As a preliminary matter, issues in an action involving charges for transportation in interstate commerce must be decided according to United States statutes so far as they are applicable, and according to common law, where not controlled by such statutes. *American Ry. Express Co. v. Mohawk Dairy Co.*, 250 Mass. 1, 144 N.E. 721 (1924). Federal law, to the extent it is applicable, and federal common law, then control the construction of the bill of lading in question here, as the parties used that bill in connection with the shipment of tires in interstate commerce. *Illinois Steel Co. v. Baltimore & O. R. Co.*, 320 U.S. 508, 64 S.Ct. 322, 88 L.Ed. 259 (1944).

An important function of the bill of lading is to give formal expression to the stipulations and conditions under which a carrier seeks to obtain a modification or limitation of the liability that otherwise would be imposed upon it under common law. *In the Matter of Bills of Lading*, 52 I.C.C. 671 (1919). Prior to 1919, however, neither common law nor federal law required any particular form of contract or solemnity of execution. *Id.* In 1919, the Interstate Commerce Commission commenced an inquiry with the ultimate goal of creating uniformity in bills of lading. This inquiry led to the Commission's prescription of a domestic uniform straight bill of lading form. The Commission has amended this form many times since its adoption, but today it is substantially the same as it was in 1919. *In re Bills of Lading*, 64 I.C.C. 357 (1921); 66 I.C.C. 63 (1922); 167 I.C.C. 214 (1930); 172 I.C.C. 362 (1931); 245 I.C.C. 527 (1941).

The bill of lading in question here is substantially the same as the I.C.C. prescribed bill of lading with one major exception. In the section dealing with freight charges, the I.C.C. bill states:

> If charges are to be prepaid,
> write or stamp here,
> "To be prepaid."

> _____

As noted earlier, the Consolidated Freightways' bill of lading box requires a check mark in its box if the charges are to be collect.

Both bills contain a "non-recourse" provision conditioned upon Section 7 of the I.C.C. bill of lading terms and conditions. The "non-recourse" provision states that upon the consignor's signing that clause, the carrier shall not make delivery of that particular shipment without payment of freight and all other lawful charges. Section 7 of the I.C.C. bill of lading terms and conditions states in pertinent part that:

.   .   . The consignor shall be liable for the freight and all other lawful charges, except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation, shall make delivery without requiring such payment, the consignor .   .   . shall not be liable for such charges.   .   .   .

Nothing herein shall limit the right of the carrier to require at time of shipment the prepayment or guarantee of the charges.   .   .   .

The "non-recourse" provision and section 7 of the conditions recognize the fact that the primary right of the carrier in the conduct of its business is that of reasonable compensation for the service rendered by it. *In the Matter of Bills of Lading, supra* at 721. The carrier is entitled to assure such compensation by demanding it in advance. *Id.* But as the Commission noted in 1919:

In ordinary commercial practice, however, the carrier waives its right to prepayment of charges and looks to the consignee for the same, its claim being secured by a lien upon the goods. There is a presumption, when goods are transported without exaction of charges in advance, that the consignee is liable for the same as the owner of the goods and that the carrier may look to him for payment. This, however, is a rebuttable presumption. The consignor, being the one with whom the contract of transportation is made, is originally liable for the carrier's charges and unless he is specifically exempted by the provisions of the bill of lading, or unless the goods are received

and transported under such circumstances as to clearly indicate an exemption for him, the carrier is entitled to look to the consignor for his charges. In order to secure exemption from liability for the freight charges in case the shipment is delivered to the consignee without the collection of such charges, the consignor is required to append his signature .   .   . in a space of the bill of lading provided for that purpose.   .   .   .

*Id.*

■■■ The above language establishes a number of definite rules of liability. If the consignor does not sign the "non-recourse" clause, he remains liable to the carrier for all lawful charges. *Illinois Steel Co. v. Baltimore & O. R. Co., supra.* The carrier is free to demand that consignor pay in advance, or it may decline to make delivery to the consignee until the freight charges are paid or guaranteed, or if the carrier delivers the goods to the consignee without payment, the carrier may also look to the consignee as being liable for all freight charges. *Id.* But if the consignor signs the "non-recourse" clause and no provision is made for prepayment of freight (i. e. "to be prepaid" is not stamped or written on the designated line of a uniform straight bill of lading), the carrier's delivery of the shipment to the consignee relieves the consignor of liability. · *Id.,* citing *Louisville & N.R.R. Co. v. Central Iron Co.,* 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900 (1924). Acceptance of the delivery establishes the liability of the consignee to pay all freight charges. *Pittsburgh C., C. & St. L. Ry. Co. v. Fink,* 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151 (1919); *New York Cent. & H.R.R. Co. v.· York & Whitney Co.,* 256 U.S. 406, 41 S.Ct. 509, 65 L.Ed. 1016 (1920).

In light of these long established rules of liability, the facts in the present case raise only a single question: whether the affirmative failure of the consignor to check a non-uniform freight charges provision which if checked, would have made the charges collect, restricts the operation of the "non-recourse" clause so that, despite

its presence in the bills of lading, the consignor is still liable for the $804 freight charge. At the outset we must assume as the United States Supreme Court did in *Illinois Steel Co. v. Baltimore & O. R. Co., supra,* that "both clauses were intended by the parties to have some effect, and hence, unless unavoidably in conflict, they must, so far as they reasonably may, be reconciled so that each will have some scope of operation. *Id.* 320 U.S. at 513–514, 64 S.Ct. at 325.

■ The unique circumstances of this case cause these clauses to conflict, and they compel us to give precedence to the "non-recourse" provision. We hold that in this narrow fact situation the "non-recourse" provision precludes the carrier from recovering freight charges from the consignor. Four significant factors lead to this result: (1) the consignor's signing the "non-recourse" provision; (2) the carrier's delivery of the shipment to the consignee without first receiving payment for any of the lawful charges; (3) the carrier's failure to take any precautions prior to delivery sufficient to assure payment of the charges; (4) the carrier's use of a non-uniform freight charge provision in the bill of lading.

The language of the "non-recourse" provision which the consignor signed and section 7 of the conditions makes it clear that once the carrier has delivered the shipment to the consignee, the consignor is not liable for the freight or other lawful charges. Here the carrier made delivery to the consignee on two different days, and the consignee accepted these deliveries. The language of the "non-recourse" provision signed by the consignor and the rule that acceptance of delivery establishes liability for all freight charges in the consignee require the carrier to look to the consignee rather than the consignor for the freight charges. If the appellant wanted to protect itself in terms of collecting the freight charges from the consignor it should have either required payment at the time of shipment or it should have required the consignor to guarantee the charges. Section 7 is explicit that its terms do not limit "the right of the carrier to require at the time of

the shipment the prepayment or the guarantee of the charges." It is undisputed that the consignor did not prepay the freight charges. Neither does the record indicate that the carrier required prepayment at the time of shipment.

■ Appellant contends that the consignor's acceptance of the bill of lading without indication that the goods were to be shipped on a "collect" basis amounts to a "guarantee of the charges" within the meaning of Section 7. Appellant cites 49 U.S.C. § 3(2) in support of this contention:

> Payment of freight as prerequisite to delivery. No carrier by railroad and no express company subject to the provisions of this chapter shall deliver or relinquish possession at destination of any freight or express shipment transported by it until all tariff rates and charges thereon have been paid, except under such rules and regulations as the Commission may from time to time prescribe to govern the settlement of all such rates and charges and to prevent unjust discrimination: . .

Appellant states in its brief that the rules and regulations of the Interstate Commerce Commission pertaining to billing for charges (specifically 49 C.F.R. § 1322.1) state that bills must be presented to the consignor within seven calendar days from the first 12:00 midnight following delivery of freight excluding Saturdays, Sundays, and legal holidays. Furthermore, bills may be presented by mail, and time of mailing shall be time of presentation. 49 C.F.R. § 1322.4. Appellant billed the consignor on February 26, 1975, the date of delivery of part of the tires. It concludes that because the I.C.C. regulations permit delayed presentation of charges, it can be inferred that an indication that charges are prepaid is a guarantee of payment by the consignor. We disagree.

49 C.F.R. 1322.1(a) specifically states:

> *Upon taking precautions* deemed by them to be *sufficient to assure payment* of the tariff charges within the credit period herein specified, common carriers by motor may relinquish possession of freight

in advance of payment of the tariff charges thereon and may extend credit in the amount of such charges to *those who undertake to pay them. . . .* (emphasis added)

This regulation anticipates the extension of credit when the carrier has taken precautions it deems sufficient to assure payment. Section 7 of the terms and conditions of the uniform domestic straight bill of lading indicates that "precautions . . . sufficient to assure payment" means requiring payment at the time of shipment or requiring a guarantee of payments. Appellant took neither precaution here. Although discretionary, the language of 49 C.F.R. 1322.1 envisions that the carrier will take some precautions to assure payment of freight charges before extending credit to a consignor. Otherwise the regulation would be meaningless. Appellant cannot now claim the benefit of the statutory exception to 49 U.S.C. § 3(2) where it had taken no steps to protect itself from nonpayment in compliance with 49 C.F.R. 1322.1(a).

We base our conclusion that the consignor's failure to mark the "freight charges collect box" did not guarantee his payment of the freight charges in part on the fact the freight charge provision here is not that which appears on a uniform domestic straight bill of lading. If a uniform domestic straight bill of lading had been used, the consignor's failure to write or stamp "to be prepaid" along with his signing the "non-recourse" provision would render the consignee liable for all freight charges upon his acceptance of delivery of the goods. But if the consignor fails to check the freight collect box on the bill of lading used by Consolidated Freightways but does sign the "non-recourse" clause, there is a conflict when delivery has occurred. We think that the conflict should be resolved in favor of the consignor. Appellant should not recover freight charges from the consignor when it uses a non-uniform provision which conflicts with a standard, well accepted, "non-recourse" provision. This is especially true where the appellant argues that the consignor has guaranteed payment by failing to check a box and the carrier itself has taken no precaution to assure payment. Contrary to appellant's contention there was no *affirmative* representation on the bill of lading that the freight was to be prepaid.

Appellant cites two federal cases in support of the proposition that by indicating that charges are prepaid, the consignor has guaranteed payment of freight charges. *See Chicago Great Western R. Co. v. Hopkins,* 48 F.Supp. 60 (1942); *Illinois Steel Co. v. Baltimore & O. R. Co., supra.* These cases are distinguishable on two critical grounds. Both cases involved a uniform straight bill of lading in which the consignor had affirmatively marked "to be prepaid" on the bill in accordance with the instructions. Both cases also dealt with undercharge situations.

Reversed and remanded with directions to enter judgment for the defendant-respondent. Costs to respondent.

SHEPARD, C. J., and McFADDEN, BAKES and BISTLINE, JJ., concur.