**C.F. ARROWHEAD SERVICES, INC., Plaintiff,**

v.

**AMCEC CORPORATION, Defendant.**

No. 84 C 6827.

United States District Court, N.D. Illinois, E.D.

July 3, 1985.

Steven C. Weiss, Ronald M. Hill, Diamond & Weiss, Chicago, Ill., for plaintiff.

David L. Clark, Brozosky & Brosk, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

Presently before the court are the parties' cross-motions for summary judgment. Both sides agree that the only question is purely legal—whether, on the undisputed facts of this case, a common carrier can recover its freight charges from the party which accepted the goods as consignee. Jurisdiction exists pursuant to 28 U.S.C. § 1337. *Kansas City Terminal Ry. Co. v. Jordon Mfg. Co.*, 750 F.2d 551 (7th Cir. 1984).

Plaintiff C.F. Arrowhead Services, Inc. ("CF") is a common carrier operating pursuant to authority issued by the Interstate Commerce Commission ("ICC"). In October of 1981 CF carried various goods from Tennessee to Michigan. The consignor and seller of the goods was Mattrace Enterprises ("Mattrace") and the consignee and apparent buyer of the goods was defendant AMCEC Corporation ("AMCEC"). CF carried the goods pursuant to tariffs on file with the ICC and issued bills of lading and freight bills for each of the shipments. Each bill of lading provided that if a certain box were not checked, then the freight was prepaid. None of the boxes were checked. Each bill of lading also contained a provision that the shipment was received subject to the applicable tariffs. Section seven of the applicable tariff states

> The owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property, but, except in those instances where it may lawfully be authorized to do so, no carrier shall deliver or relinquish possession at destination of the property covered by this bill of lading until all tariff rates and charges thereon have been paid.... PROVIDED, that, a consignee shall not be liable for transportation charges (beyond those billed against him at the time of delivery for which he is otherwise liable) which may be found to be due after the property has been delivered to him subject to all of the following conditions:
>
> (a) The shipper or consignor has instructed the carrier to deliver the property to a consignee other than the shipper or consignor.
>
> (b) The consignee is an agent only and has no beneficial title in the property and
>
> (c) Prior to delivery the consignee has notified the delivering carrier in writing that he is only an agent and has no beneficial title in the property and
>
> (d) In cases where the shipment has been reconsigned or diverted to a point other than that specified in the bill of lading the consignee has also notified the delivering carrier in writing of the name and address of the beneficial owner of said property.
>
> Where the consignee is not liable for certain transportation charges in accordance with this provision and the preceding conditions, the shipper or consignor, or, in the case of a shipment so reconsigned or diverted as specified in condition (d), the beneficial owner shall be liable for such additional charges.
>
> PROVIDED FURTHER, that where the shipment is designated "prepaid" the shipper or consignee shall remain liable for undercharges which result

**1386**

from an erroneous determination of the transportation charges assessed.

Although the shipment was marked as prepaid, Mattrace had apparently not in fact prepaid because after making the shipment CF billed Mattrace for the freight charges. Mattrace did not pay and cannot now be located so CF demanded payment from AMCEC, who refuses to pay.

CF cites numerous cases holding that the bill of lading has the same effect as a statute. See, e.g., *City of New Orleans v. Southern Scrap Material Co.*, 491 F.Supp. 46, 48 (E.D.La.1980), and cases cited therein. Usually, the tariffs are used to determine how much must be paid, but they also can govern the issue here presented; namely, who shall pay. *Blanchette v. Hub City Terminals, Inc.*, 683 F.2d 1008 (7th Cir. 1981). Here, CF argues that the only way AMCEC could have escaped liability for the freight charges was to satisfy the four conditions (a) through (d) quoted above. Since it is undisputed that AMCEC did not comply with those conditions, CF concludes that AMCEC is liable.

AMCEC argues that the portion of section 7 of the tariff quoted above that begins "PROVIDED FURTHER ..." means that "when a shipment is *designated* prepaid (meaning that *actual* prepayment by the shipper is not necessary), a shipper or consignee will be liable for undercharges, *even though the consignee is not liable for the amount designated prepaid*" (defendant's response at 3, emphasis in original). AMCEC interprets the PROVIDED FURTHER clause as based on the assumption that when a shipment is designated prepaid the consignee is not liable for the freight charges, and views the purpose of that clause as ensuring that nonetheless the consignee will be liable for undercharges that might be discovered later. AMCEC cites no authority for this interpretation, and argues only that "[t]here is no other reason for such language to be in the statute" (id.).

This court rejects both parties' interpretations of the tariff. Resolution of this case is found in the first sentence of section 7. The first part of that sentence, which is the only part CF quotes, makes the consignee liable for the freight charges; that is, the charges that are due at the time of delivery. As the rest of the sentence makes clear, however, that liability is not absolute. The carrier, unless lawfully authorized to do so (an exception not involved here), must not relinquish possession of the goods being carried until the freight charges have been paid. The obvious meaning of the sentence as a whole is that the consignee must pay the charges if the carrier so demands but the carrier must make that demand before giving up the goods. So read, the sentence makes a very practical (and traditional) compromise: the carrier can use its possession of the goods to ensure payment and the consignee can refuse delivery until it is satisfied that the proper party is paying the freight charges. Here, by relinquishing the goods without demanding payment from AMCEC, CF also relinquished its right to recover the freight charges due at that time from AMCEC.

■ That reading of the first sentence also is consistent with and makes sense of the rest of the quoted portion of section 7. The four conditions (a) through (d), rather than applying to all freight charges as CF would have it, applies only to those charges "which may be *found to be due after* the property has been delivered." The charges CF seeks to collect were not found to be due *after* delivery; they were due at the time *of* delivery. Thus those conditions simply give the consignee a way to protect itself against liability for charges which, at the time of delivery, it knows nothing about because at that time *no* one knows about them. See *Blanchette*, supra, 683 F.2d at 1010–11, interpreting a very similar provision. Since such a charge would constitute a charge in addition to the amount already thought to be due, it is not surprising that they are referred to as "*additional* charges" in the sentence following the four conditions.

The PROVIDED FURTHER clause on which AMCEC places such heavy reliance does not address this situation at all. It

simply provides that even though a shipment may be marked prepaid (thus suggesting no further charges will be owed) both the shipper and the consignee are liable for erroneous undercharges. Who is liable for the amount originally thought to be due the PROVIDED FURTHER clause does not reveal, by implication or otherwise.

Construing the tariff as a whole, *Western Transportation Co. v. Wilson & Co., Inc.,* 682 F.2d 1227, 1230 (7th Cir.1982), this court concludes that on these facts it does not make AMCEC liable for freight charges due at the time of delivery.

■ CF also argues that AMCEC is liable for the charges by operation of law because it accepted delivery of the goods. This doctrine existed at common law, see *Pittsburgh, C., C. & St. L. Ry. Co. v. Fink,* 250 U.S. 577, 581, 40 S.Ct. 27, 63 L.Ed. 1151 (1919), but for present purposes it appears to have originated in three Supreme Court cases: *Fink,* supra; *New York Central & H.R.R. Co. v. York & Whitney Co.,* 256 U.S. 406, 41 S.Ct. 509, 65 L.Ed. 1016 (1921); and *Louisville & N.R. Co. v. Central Iron & Coal Co.,* 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900 (1924). (The latter case involved the liability of the consignor rather than consignee, but the Court discussed and restated the consignee rule.) These cases undoubtedly established that a consignee who upon delivery pays the freight charge thought to be due remains liable for the difference when the carrier later discovers that the rate stated was lower than the applicable statutory rate. However, that situation is at least arguably distinguishable from the question whether a consignee is liable for any freight charges at all when the carrier makes no demand for them before delivery. Moreover, all three of these cases were decided before the present version of the first sentence of section 7 of the uniform bill of lading was adopted in 1922 in 66 I.C.C. 63 (1922). Given the earlier version—"The owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property, and, if required, shall pay the same before delivery" (see *In the Matter of Bills of Lading,* 52 I.C.C. 671, App.B (1919), quoted in *Central Iron,* 265 U.S. at 64–65, 44 S.Ct. at 441–42)—it is not surprising the Court did not consider whether the liability of a consignee turned on whether payment was demanded before delivery.[1]

Given the change in the uniform bill of lading, one might have thought the rules concerning consignee liability also would change, especially since the *Fink* case made quite clear that liability should be determined according to the applicable provisions regulating interstate commerce. 250 U.S. at 581, 40 S.Ct. at 27. It is also worth noting that the Supreme Court recently left open whether a violation of the contract represented by the bill of lading is a defense to a suit for freight charges. *Southern Pacific Transportation Co. v. Commercial Metals Co.,* 456 U.S. 336, 344 n. 9, 102 S.Ct. 1815, 1821 n. 9, 72 L.Ed.2d 114 (1982).[2] Nonetheless, later cases have continued to state, relying almost exclusively on the three early Supreme Court cases, that acceptance of delivery makes a consignee liable for all freight charges, without regard to when payment is demanded. Some of these statements appear as dicta. See, e.g., *Illinois Steel Co. v. Baltimore & O. R.R. Co.,* 320 U.S. 508, 513, 64 S.Ct. 322, 325, 88 L.Ed. 259 (1944); *O'Boyle Tank Lines, Inc. v. Beckham,* 616

---

1. *New York C.R. Co. v. Warren Ross Lumber Co.,* 234 N.Y. 261, 137 N.E. 324 (1922), and *Western & A.R. Co. v. Underwood,* 281 F. 891 (N.D.Ga. 1922), cited by CF, were also decided when the earlier version of section 7 was in effect.

2. It could also be argued that because the first sentence of section 7 was based on 49 U.S.C. § 3(2) (now 49 U.S.C. § 10743), see 64 I.C.C. at 360, and *Commercial Metals* held a violation of § 3(2) by the carrier to be no defense to an

action to recover freight charges, then a violation of the duty imposed by section 7 of the bill of lading likewise should not be a defense. Moreover, since the two sections of the present version of that first sentence of section 7 were adopted separately, compare 64 I.C.C. 357 appendix D with 66 I.C.C. at 64, it could also be argued that the duties imposed by each half of the sentence were meant to be independent of each other.

F.2d 207, 209 (5th Cir.1980); *Union Pacific R.R. Co. v. Hall Lumber Sales, Inc.,* 419 F.2d 1009, 1012 (7th Cir.1969), cert. denied, 399 U.S. 905, 90 S.Ct. 2194, 26 L.Ed.2d 559 (1970); *Atchison, T. & S.F. Ry. Co. v. Midland Cooperatives, Inc.,* 306 F.Supp. 723, 726 (W.D.Okla.1969); *Consolidated Freightways Corp. v. Bergan,* 99 Idaho 609, 586 P.2d 1053, 1056 (1978). In other cases, however, the statement was directly relevant to the decision. See, e.g., *States Marine International, Inc. v. Seattle-First National Bank,* 524 F.2d 245, 248 (9th Cir.1975); *Southern Pacific Co. v. Miller Abattoir Co.,* 454 F.2d 357, 359 (3d Cir.1972); *Northwestern P.R. Co. v. Burchwell Co.,* 349 F.2d 497, 498 (5th Cir. 1965); *Empire Petroleum Co. v. Sinclair Pipeline Co.,* 282 F.2d 913, 916 (10th Cir. 1960); *New York C.R. Co. v. Transamerican Petroleum Corp.,* 108 F.2d 994, 997–98 (7th Cir.1939). This weight of authority causes this court to accept the rule despite its somewhat questionable lineage.

■ AMCEC argues that despite the rule just discussed CF is estopped to collect from it because its payments to Mattrace expressly included the freight charges and it accepted delivery in reliance on CF's representation that Mattrace had in fact paid CF for the freight. The estoppel exception to the consignee liability rule is well-established in this circuit. *Consolidated Freightways Corp. v. Admiral Corp.,* 442 F.2d 56 (7th Cir.1971). See also *In re Roll Form Products, Inc.,* 662 F.2d 150 (2d Cir.1981); *Missouri P.R. Co. v. National Milling Co.,* 409 F.2d 882 (3d Cir.1969); *Missouri P.R. Co. v. Lake Charles Grain & Grocery Co.,* 320 F.Supp. 1064 (W.D.La.1971). CF responds that an essential element of the estoppel exception is that the consignee pay the freight charges to the consignor *after* delivery in detrimental reliance on the carrier's misrepresentation that it had received payment from the consignor.[3] See *Hilt Truck Lines, Inc. v. House of Wines, Inc.,* 207

Neb. 568, 299 N.W.2d 767 (1980). Here, AMCEC had already paid most of the purchase price and the freight charges to Mattrace before the shipments were made. However, this court does not view that factual difference as precluding use of the estoppel exception. Given the rule of consignee liability discussed above, accepting delivery is obviously a detriment to a consignee since it then is liable for the freight charges. Since AMCEC obviously would not want to pay the freight charges twice, it would not have accepted delivery if it had known that, contrary to CF's representation, Mattrace had not prepaid the freight charges. Therefore, AMCEC "changed its position detrimentally in reliance on" CF's misrepresentation. *Commercial Metals,* 456 U.S. at 347, 102 S.Ct. at 1822 (discussing the *Admiral* case). Moreover, the equities are all on AMCEC's side. Allowing CF to recover under these circumstances would "require an innocent consignee to defray freight charges exactly double the amount contemplated by the applicable tariffs." 442 F.2d at 65 (Stevens, J., concurring). And "most significant, the defendant-consignee ... had no means by which to protect itself from freight charge liability." 456 U.S. at 347, 102 S.Ct. at 1823. Therefore, the court finds that on the undisputed facts CF is estopped to claim its freight charges from AMCEC.

IT IS THEREFORE ORDERED that C.F. Arrowhead Services, Inc.'s motion for summary judgment is denied and AMCEC Corporation's cross-motion for summary judgment is granted. This case is dismissed with prejudice.

---

**3.** CF also seeks to distinguish *Admiral* as a case where the consignee paid the freight charges separately. However, it makes no difference in either an economic or a legal sense whether a consignee uses one check to pay freight charges and another for the purchase price, or one for both.