TRANSCONEX, INC., Plaintiff-Appellant, v. JEFFERSON INDUSTRIES, INC., Defendant-Appellee.

First District (1st Division)   No. 1—88—0986

Opinion filed May 1, 1989.

Steven C. Weiss & Associates, of Chicago (Steven C. Weiss and Ronald M. Hill, of counsel), for appellant.

Pitler & Mandell, of Chicago (Barry A. Pitler, Mark L. Spiegel, and Sigi M. Offenbach, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

The principal issue in this appeal is whether the trial court erred in failing to find that, as a matter of law, plaintiff, Transconex, Inc., was required to collect its full tariff charges for the transportation services rendered to defendant, Jefferson Industries, Inc., regardless of an alleged misquotation initially given. We reverse and remand.

The plaintiff, Transconex, Inc. (Transconex), is an interstate freight forwarder and non–vessel-operating common carrier which makes both interstate and international transportation arrangements on behalf of its customers. Defendant Jefferson Industries, Inc. (Jefferson), is a manufacturer of carpets and mats with plants located in Chicago, Illinois, and Chatsworth, Georgia.

In August of 1983, Jefferson sought to ship two quantities of carpets to a customer in Trinidad, West Indies. In arranging for the shipments, Jefferson used the services of I.F.C. Corporation (IFC), a freight forwarder. On or about August 13, 1983, at the request of IFC, Transconex accepted two sealed 40-foot trailers, alternately described as containers of goods, for delivery to Trinidad. One shipment originated at Chicago, Illinois, and the other at Chatsworth, Georgia.

Prior to shipping the goods, Jefferson received a quotation for the freight charge. The bills of lading show that the freight charges from Chicago to Trinidad were $6,000 and the charges from Chatsworth to Trinidad were $6,300. The information on the bills of lading indicated that the containers held 800 cubic feet of goods, although one of the containers had a capacity of 2,686 cubic feet of freight and the other had a cubic capacity of 2,373 feet. According to Transconex, the freight charges were computed based upon the information received from IFC.

Subsequent to transporting the goods, Transconex discovered that the charges originally assessed and collected were erroneous. Although Jefferson had sealed up the containers, in effect using the en-

tire capacity of the containers, Transconex testified that the original charges were based upon the use of only 800 cubic feet. Transconex then issued corrected bills of lading reflecting what it believed to be the correct tariff charges. The revised charges were approximately $13,319.25 greater than the charges initially assessed and collected.

Jefferson refused to pay the revised rates and Transconex filed suit on March 14, 1986. Following a bench trial, judgment was entered in favor of defendant and pláintiff now brings this appeal.

Plaintiff contends that the trial court's decision was contrary to law in that plaintiff was required to assess and collect its full tariff charges regardless of any initial misquotations of the rate. Plaintiff points out that the decision of the trial court was not based upon the tariffs introduced at trial, but was based upon purported quotations given to defendant as to what the charges would be and that reversal is warranted as the trial court improperly decided the case based upon contract principles. We agree.

As an interstate freight forwarder and non–vessel-operating common carrier, Transconex was operating pursuant· to authority issued by the Interstate Commerce Commission (ICC) and Federal Maritime Commission (FMC). At the time Transconex agreed to transport the shipments in issue, both the ICC and FMC required that a party subject to the jurisdiction of the respective commissions publish tariffs and assess only those rates contained in said tariffs. See 49 U.S.C. §10761(a) (1982); 46 U.S.C. §817 (1982).

■ Once the tariff is published, the rate is no longer merely the rate imposed by the carrier; it becomes the rate imposed by law. (*Southern Pacific Co. v. Brown, Alcantar & Brown, Inc.* (5th Cir. 1969), 409 F.2d 1331, 1332.) Tariffs have the force and effect of statutes (*American Ry. Express Co. v. American Trust Co.* (7th Cir. 1931), 47 F.2d 16, 18), and a shipper is conclusively presumed to know the tariff (*Aero Trucking, Inc. v. Regal Tube Co.* (7th Cir. 1979), 594 F.2d 619, 622).

■ It has long been held that a carrier has not only the right, but the duty to recover the correct charges under the applicable tariff. (See, *e.g.*, *Louisville & Nashville R.R. Co. v. Central Iron & Coal Co.* (1924), 265 U.S. 59, 65, 68 L. Ed. 900, 902, 44 S. Ct. 441, 442.) Moreover, the carrier has the duty to collect and the shipper the obligation to pay the correct charges regardless of whether there was a misquotation of the rate through mistake or otherwise. *Louisville & Nashville R.R. Co. v. Maxwell* (1915), 237 U.S. 94, 97, 59 L. Ed. 853, 855, 35 S. Ct. 494, 495.

The schedule of rates and charges set forth in the tariff is both

conclusive and exclusive; it may not be added to through reference to outside contracts, agreements, understandings or promises. *Southern Ry. Co. v. Prescott* (1916), 240 U.S. 632, 638, 60 L. Ed. 836, 839, 36 S. Ct. 469, 472.

While defendant Jefferson acknowledges the absolute rule generally imposed in tariff cases, it urges that, based upon equitable principles, it should not be applied here, because Jefferson had no alternative but to rely upon the carrier's interpretation of its own tariff and had no way to check the quoted rates against the actual tariff.

In this regard, we note that it is well established that whether a deviation from the lawful tariff charges was intentional or not is wholly without significance. (*F. Burkhart Manufacturing Co. v. Fort Worth & D.C. Ry. Co.* (8th Cir. 1945), 149 F.2d 909, 910.) As the United States Supreme Court noted in *Kansas City Southern Ry. Co. v. Carl* (1913), 227 U.S. 639, 653, 57 L. Ed. 683, 688, 33 S. Ct. 391, 395, no action or omission of the carrier can estop or preclude it from enforcing payment of the full amount of the legally applicable tariff charges. Nor will equitable considerations serve to justify failure of a carrier to collect any part of lawful tariff charges. *Baldwin v. Scott County Milling Co.* (1939), 307 U.S. 478, 485, 83 L. Ed. 1409, 1414, 59 S. Ct. 943, 948.

■ The only defenses which can be asserted against a carrier's suit for freight charges are that the services were paid for; that the services were not rendered; that the services were charged under an inapplicable tariff schedule; or that the rates were not reasonable. (*In re Penn Central Transportation Co.* (3d Cir. 1973), 477 F.2d 841, 844, *aff'd sub nom. United States Steel Corp. v. Trustees of Penn Central Transportation Co.* (1973), 414 U.S. 885, 38 L. Ed. 2d 137, 94 S. Ct. 231.) An estoppel defense is available only in the narrow situation where a consignee relies on the misrepresentation of the carrier and is asked to pay double the applicable tariff charges, once to the shipper and once to the carrier. (*Inman Freight Systems, Inc. v. Olin Corp.* (8th Cir. 1986), 807 F.2d 117, 121.) An estoppel defense is not available in a suit for undercharges when a carrier simply misquotes the rates. *Seaboard System R.R., Inc. v. United States* (11th Cir. 1986), 794 F.2d 635, 637-38.

■ Jefferson admits that the services were rendered and that it has not paid the amount sought by Transconex. Jefferson has not raised the issue of reasonableness and that issue cannot be considered by this court, as the issue of reasonableness is solely within the jurisdiction of the Interstate Commerce Commission and the Federal Maritime Commission. (See *Texas & Pacific Ry. Co. v. Abilene Cotton Oil*

*Co.* (1907), 204 U.S. 426, 51 L. Ed. 553, 27 S. Ct. 350.) Therefore, the only issue properly before the trial court was the applicable charges due under the tariff.

■ Jefferson's contention that the tariff applied by Transconex either was inapplicable or ambiguous and should be construed against the drafter has no merit. The item questioned by Jefferson is Rule 110 of plaintiff's Ocean Freight Tariff No. 7, entitled "Control and Exclusive Use of Trailer/Container." Beneath the heading are three subparts which use only the word "trailer." Because the word "container" was not carried forward, Jefferson contends that Rule 110 does not apply to the subject shipments, or, in the alternative, is ambiguous. This court does not find Rule 110 to be ambiguous for the following reasons.

First, according to Webster's New Collegiate Dictionary 1536 (9th ed. 1983), the slash between the words trailer and container in the heading means "and/or." Applying the common dictionary meaning to Rule 110, it is clear that the rule applies to the control and exclusive use of trailers and/or containers. That Transconex chose not to carry forward such a cumbersome format throughout each subpart of Rule 110 does not make the rule either inapplicable or ambiguous.

In addition, plaintiff's witness Mr. Catinchi testified that based upon his 50 years of experience in the industry, the words "trailer and container" are more or less synonymous. This view is supported by *Dealers Transit, Inc. Extension-Pennsylvania* (1960), 83 MCC 779, 784-85, in which the ICC discussed the similarities between containers and trailers and defined containers as detachable trailer bodies. In light of *Dealers Transit*, we decline to find Rule 110 inapplicable on the basis of ambiguity.

■ We are also unpersuaded by Jefferson's argument that it was not "fully and clearly informed" about the rates and rules agreed to and "had no way to check the quoted rates against the actual tariff." As noted previously, Transconex was required to have tariffs on file with the ICC and the FMC and the tariffs are a matter of public record. Jefferson is conclusively presumed to know the tariff (see *Aero Trucking, Inc. v. Regal Tube Co.* (7th Cir. 1979), 594 F.2d 619, 622), and whether or not Jefferson actually checked with the ICC and FMC to determine the rates is irrelevant under the law.

■ Transconex has also raised the issue that it is entitled to prejudgment interest on the amounts due from the date of shipment. We note that prejudgment interest is generally awarded in claims for undercharges. (*Norfolk & Western Ry. Co. v. North American Car Corp.* (N.D. Ill. 1978), 455 F. Supp. 424, 426; *Southern Pacific Transporta-*

*tion Co. v. San Antonio* (5th Cir. 1984), 748 F.2d 266, 274.) We therefore remand this matter to the circuit court for a determination of the amount of prejudgment interest to be awarded to Transconex.

For the reasons stated above, the judgment entered in favor of defendant is reversed and the cause is remanded to the circuit court of Cook County with directions to determine the amount of prejudgment interest owed to plaintiff.

Judgment reversed and remanded with directions.

BUCKLEY and QUINLAN, JJ., concur.