CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE, Plaintiff-Appellee and Cross-Appellant, v. PEACOCK ENGINEERING COMPANY, Defendant-Appellant and Cross-Appellee.

First District (3rd Division)   No. 1—92—1896

Opinion filed November 10, 1993.

William J. Wickersty, of J. Herbert Landon, Ltd., of Chicago, for appellant.

Steven C. Weiss, of Martin, Craig, Chester & Sonnenschein, of Chicago, for appellee.

JUSTICE CERDA delivered the opinion of the court:

Defendant, Peacock Engineering Company, appeals from the entry of summary judgment in favor of plaintiff, Consolidated Freightways Corporation of Delaware, and from the denial of defendant's motion for summary judgment. Plaintiff cross-appeals from the denial of an award of prejudgment interest. We affirm.

The issue in this case is whether, where a common carrier delivers a shipment without a demand for payment together with a bill of lading marked "collect," and the consignee accepts delivery, the consignee is liable for the freight charges.

Plaintiff alleged the following in its amended complaint. Plaintiff was an interstate motor carrier.[1] On two occasions in 1987, plaintiff was engaged by Winn Dixie Dist. Center (Winn Dixie) to transport goods by motor vehicle to defendant on a freight charge collect basis. Plaintiff delivered the shipments to defendant, who accepted delivery. Defendant refused to pay plaintiff the freight charges.

Two bills of lading were attached to the amended complaint. The bills of lading were dated January 7, 1987, and stated that the shipper was Winn Dixie located in Florida and that the consignee was defendant located in Illinois. Marked on each bill of lading was a box that stated that the freight charges were to be collect.

Two delivery receipts were signed by defendant on January 9,

---

[1] The parties agree on appeal that plaintiff is a common carrier.

1987, and January 14, 1987. The delivery receipts stated that the charges were collect.

Defendant admitted in its answer that plaintiff delivered the shipments to it. Defendant asserted the following as affirmative defenses in its answer: (1) the contract to pay the freight charges was between plaintiff and the owner of the goods, which was Megaware, Inc.; (2) no contractual relationship for the payment of freight charges arose between plaintiff and defendant by the shipper's mere designation of defendant as consignee; and (3) plaintiff should be estopped from seeking payment from defendant because defendant accepted the shipments in reliance upon plaintiff's practice of billing Megaware for all the shipments.

Defendant filed a motion for summary judgment that argued that it was the understanding of the parties that Megaware would pay the freight charges. Defendant filed the supporting affidavit of Leslie L. Ponder, who swore to the following. She was defendant's financial manager. Defendant's agreement with Megaware was to accept delivery of goods on Megaware's behalf in order to repackage, refurbish, and store them with the intention to later ship them as instructed by Megaware. Plaintiff had no written or oral agreement with defendant that defendant would pay the freight charges for Megaware's goods. Plaintiff billed Megaware for payment and received payment from Megaware for several shipments.

Ponder further swore to the following in her affidavit in support of defendant's reply to plaintiff's motion for summary judgment. Defendant would receive an original invoice from plaintiff one or two days after delivery, and defendant would forward the original invoices to Megaware. Defendant never received any subsequent billings, demands for payment, or correspondence concerning these freight charges from plaintiff for any of the 10 shipments prior to service of the complaint. Defendant never paid the freight charges for any of the 10 shipments.

In addition, Ponder testified to the following relevant facts at her deposition. Her understanding was that Megaware would be responsible for the freight charges for shipments coming to defendant. Defendant did not pay the freight charges because the materials did not belong to defendant. Plaintiff sent a final notice to Megaware requesting payments for the two freight bills in question. She had copies of letters and statements from plaintiff to Megaware that referenced these two freight bills, indicating that plaintiff was expecting to collect from Megaware.

Plaintiff's motion for summary judgment argued the following. Defendant as consignee was liable for the freight charges upon accep-

tance of the shipments, and the shipping documents imposed upon defendant the obligation to pay. Plaintiff was entitled to prejudgment interest and costs. Attached to the motion as an exhibit was plaintiff's tariff that contained "contract terms and conditions." Included in the tariff was section 7, which stated in relevant part:

> "The owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property; but, except in those instances where it may lawfully be authorized to do so, no carrier shall deliver or relinquish possession at destination of the property covered by this bill of lading until all tariff rates and charges thereon have been paid. The consignor shall be liable for the freight and all other lawful charges, except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation shall make delivery without requiring such payment, the consignor (except as hereinafter provided) shall not be liable for such charges, PROVIDED, That, a consignee shall not be liable for transportation charges (beyond those billed against him at the time of delivery for which he is otherwise liable) which may be found to be due after the property has been delivered to him subject to all of the following conditions ***."

Jerry Caldwell swore the following in a supporting affidavit. He was employed by plaintiff as terminal manager in Elgin, Illinois. He oversaw all of the day-to-day operations of the company including the overseeing of accounts receivable. Plaintiff delivered its original invoice to defendant. He was thoroughly familiar with bills of lading, delivery receipts, freight bills, and other shipping documents. He reviewed plaintiff's file pertaining to the Winn Dixie shipments to defendant. The shipments were tendered to plaintiff by Winn Dixie on a freight charge collect basis. Winn Dixie could have prepaid the charges, but it chose not to. If it had, plaintiff would have sent the invoice to Winn Dixie, although as consignee, defendant would also be liable. Winn Dixie identified defendant as the consignee. Winn Dixie did not identify defendant in any agency capacity. Plaintiff delivered its original invoice to defendant. Plaintiff sought to collect its charges from Megaware only as an accommodation to defendant. Megaware was not a party to the transportation contracts. Plaintiff never agreed to refrain from collecting its freight charges from defendant in the event Megaware refused to pay. Megaware eventually refused to pay the applicable freight charges. Plaintiff had rightfully pursued defendant as consignee.

Jerry L. Caldwell testified to the following relevant facts at his

deposition. It was ordinarily determined who would pay the freight charges at the time the shipment was received by plaintiff. There was no written contract in this case other than the bill of lading, which was prepared by the shipper. There was a section on the bill of lading stating whether the freight charges should be prepaid or collect, and the shipper completed that section. Plaintiff would not call a consignee to determine whether it was willing to accept the freight charges. When the freight was delivered, a freight bill would be given to the consignee.

Plaintiff's motion for summary judgment was granted, and defendant's motion for summary judgment was denied.

■ Defendant first argues on appeal that the trial court erred in granting plaintiff's motion for summary judgment because the supporting affidavit of Caldwell violated Supreme Court Rule 191(a) (134 Ill. 2d R. 191(a)) in that the affiant lacked personal knowledge of the matters at issue, and the affiant's knowledge concerning the facts of the case was limited to the freight bill and the bills of lading.

Even if the challenged sworn statements were conclusory or not based upon personal knowledge, such violations of Supreme Court Rule 191(a) (134 Ill. 2d R. 191(a)) by themselves do not establish that the trial court erred in granting plaintiff's motion for summary judgment. Defendant does not argue that, because of the alleged violations, there was a genuine issue of material fact that precluded the entry of summary judgment. Therefore, the only issue is whether defendant was liable as a matter of law.

Jerry Caldwell as terminal manager in Elgin for plaintiff could have been sworn and testified at trial to the facts contained in his affidavit. He could have testified that he was familiar with plaintiff's shipping and billing practices. He could have testified that the shipments were tendered to plaintiff by Winn Dixie on a freight charge collect basis as stated in the bills of lading and delivery receipts. We hold that his affidavit did not violate Supreme Court Rule 191(a).

Defendant argues that summary judgment should not have been entered in favor of plaintiff because the designation of defendant as consignee in the bill of lading did not create a contractual relationship between defendant and plaintiff that rendered it liable for the freight charges. Defendant distinguishes "undercharge cases" as those in which the consignee who partially paid the freight charges for accepted goods was liable for the unpaid balance. Defendant argues that plaintiff's own tariff relieved defendant from liability because section 7 provided that freight charges must be demanded of the consignee at the time of delivery.

Plaintiff argues in response in part that the bill of lading contract, which determines the consignee's contractual liability, provided that the freight charges were to be collected from defendant and that defendant ratified the terms of the bills of lading by accepting the shipments.

■ The shipper, rather than the consignee, is primarily liable to the carrier for freight charges. (*States Marine International, Inc. v. Seattle-First National Bank* (9th Cir. 1975), 524 F.2d 245, 247.) A consignee's obligation to pay freight charges most commonly arises under the Interstate Commerce Act (49 U.S.C. § 3 (1989)).[2] (*States*, 524 F.2d at 247.) This obligation may be based on a contractual obligation as well as upon a statutory requirement. (*States*, 524 F.2d at 248.) A court first examines the bill of lading, which is a receipt and a contract, to determine the existence of a consignee's contractual liability. (*States*, 524 F.2d at 248.) The mere designation in the bill of lading of the consignee as the one liable for the freight charges does not create a contractual liability between the carrier and consignee. (*States*, 524 F.2d at 248.) The Supreme Court has said that "[t]he weight of authority seems to be that the consignee is *prima facie* liable for the payment of the freight charges when he accepts the goods from the carrier." *Pittsburgh, Cincinnati, Chicago, & St. Louis Ry. Co. v. Fink* (1919), 250 U.S. 577, 581, 63 L. Ed. 1151, 1153, 40 S. Ct. 27, 27.

Defendant relies upon *C.F. Arrowhead Services, Inc. v. AMCEC Corp.* (N.D. Ill. 1985), 614 F. Supp. 1384, for its argument that it was not liable under section 7 of plaintiff's tariff. In *AMCEC*, plaintiff was a common carrier who sued defendant consignee for freight charges for goods delivered to defendant. The court interpreted section 7 of the tariff, which had the same language as section 7 of the tariff in the instant case. The court held that the consignee's liability for the freight charges was provided in this tariff section, but that the liability was not absolute. *AMCEC*, 614 F. Supp. at 1386.

■ However, the court went on to find that there was a common law doctrine that made the consignee liable upon acceptance of delivery, without regard to when payment was demanded. (*AMCEC*, 614 F. Supp. at 1387.) The court noted the "questionable lineage" of this rule due to the reliance of cases on early United States Supreme Court cases that held that a consignee was liable for undercharges where it had paid the freight charges thought to be due. (*AMCEC*,

---

[2]Section 3 was repealed by Public Law 95—473, sections 4(b) and (c), on October 17, 1978, and was recodified in sections 10701, 10741 through 10744, and 11103. United States Code Disposition Table I—A, House Report No. 95—1395.

614 F. Supp. at 1387-88, citing *Pittsburgh, Cincinnati, Chicago, & St. Louis Ry. Co. v. Fink* (1919), 250 U.S. 577, 63 L. Ed. 1151, 40 S. Ct. 27; *New York Central & Hudson River R.R. Co. v. York & Whitney Co.* (1921), 256 U.S. 406, 65 L. Ed. 1016, 41 S. Ct. 509; *Louisville & Nashville R.R. Co. v. Central Iron & Coal Co.* (1924), 265 U.S. 59, 68 L. Ed. 900, 44 S. Ct. 441.) The United States Supreme Court cases had not determined the liability of a consignee in the situation where the carrier made no demand for freight charges before delivery. (*AM-CEC*, 614 F. Supp. at 1387.) Furthermore, the United States Supreme Court cases were decided before the present version of the first sentence of section 7 of the uniform bill of lading was adopted in 1922 by the Interstate Commerce Commission. *AMCEC*, 614 F. Supp. at 1387.

The *AMCEC* case stated:

> "Nonetheless, later cases have continued to state, relying almost exclusively on the three early Supreme Court cases, that acceptance of delivery makes a consignee liable for all freight charges, without regard to when payment is demanded." (*AMCEC*, 614 F. Supp. at 1387.)

The *AMCEC* court further stated that it accepted the rule that the consignee was liable for freight charges when it accepts delivery. (*AMCEC*, 614 F. Supp. at 1388.) The rule of *AMCEC* has not been overturned, and we follow established Federal law on the issue of consignee liability for freight charges for the interstate transportation of goods. Defendant became liable for the freight charges when it accepted delivery of the goods from plaintiff and the bills of lading and delivery receipts, which were marked collect.

Defendant next argues that plaintiff should be estopped from recovering the freight charges from defendant because: (1) defendant relied on plaintiff's conduct to its detriment because, by accepting delivery, defendant placed itself in a position of potential liability; (2) defendant accepted the shipment with the reasonable belief that plaintiff would look to Megaware for payment as it had done for the eight previous shipments; and (3) it was foreseeable that, in reliance on plaintiff's conduct, defendant would forego enforcing its right to demand payment from Megaware before accepting delivery and before releasing the goods. Defendant cites the following cases.

In *Consolidated Freightways Corp. v. Admiral Corp.* (7th Cir. 1971), 442 F.2d 56, a carrier sued a consignee for freight charges. The carrier was held estopped from collecting payment from the consignee where the consignee accepted delivery of the shipments upon the representations on the delivery receipts that the charges were prepaid by the consignor, where the consignee paid the freight

charges to the consignor, where the consignee was thus deprived of its ability to protect itself from possible double liability by paying the freight charges itself directly to the carrier upon acceptance of the shipment, and where the carrier contributed to its ultimate inability to recover payment from the shipper by lax extensions of credit. *Consolidated*, 442 F.2d at 59-60.

Similarly, in *C.F. Arrowhead Services, Inc. v. AMCEC Corp.* (N.D. Ill. 1985), 614 F. Supp. 1384, 1388, the carrier was estopped from claiming its freight charges from the consignee where the carrier represented that the consignor had in fact prepaid the freight charges.

In *Checker Van Lines v. Siltek International, Ltd.* (1979), 169 N.J. Super. 102, 107, 404 A.2d 333, 336, the carrier was estopped from obtaining the freight charges from the consignee where the carrier promised to collect from a third party and where the carrier delayed for a long time in suing the consignee. The court stated that a carrier may be estopped from recovering from a consignee to prevent double payment but that estoppel doctrine was not limited to such cases. *Checker*, 169 N.J. Super. at 106, 404 A.2d at 335.

Estoppel was not available to consignees who had been undercharged in *Transconex, Inc. v. Jefferson Industries, Inc.* (1989), 182 Ill. App. 3d 893, 896, 538 N.E.2d 738, and *Inman Freight Systems, Inc. v. Olin Corp.* (8th Cir. 1986), 807 F.2d 117, 121. In these two cases the carriers' quotations for freight charges were less than the published tariff rates. The courts held that the carriers were entitled to the lawful amount of the tariff rates. (*Transconex*, 182 Ill. App. 3d at 895-96; *Inman*, 807 F.2d at 121.) Defendant argues that, although these two cases stated that estoppel was available only where a consignee relied on the carrier's misrepresentation and was asked to pay double the applicable tariff charges once to the shipper and once to the carrier, these cases were distinguishable because they did not involve suits against consignees for the full amount of the freight charges.

Plaintiff argues that the estoppel defense is not viable because: (1) estoppel is limited to instances of double payment, citing *Transconex* (182 Ill. App. 3d 893, 538 N.E.2d 738); (2) there was no evidence that, prior to delivery, plaintiff knew that Megaware was intended to be exclusively responsible for the charges; (3) plaintiff never acted in any way that would lead defendant reasonably to believe that plaintiff intended to collect solely from Megaware; (4) defendant knew it had liability exposure by accepting a freight collect shipment; (5) defendant was not injured because it had a viable cause of action against Megaware and there was no evidence that Megaware was bankrupt; and (6) defendant did not establish a claim of being misled by plaintiff.

Defendant's estoppel defense is rejected on the basis that there is no evidence that plaintiff misled defendant. Plaintiff did not seek payment from defendant upon delivery, but this is not conduct upon which defendant could reasonably base a belief that plaintiff would only seek payment from the consignor. The boxes on the bills of lading were marked collect, and the delivery receipts signed by defendant were marked collect. Defendant's acceptance of the goods made it liable as a matter of law. Under these circumstances, plaintiff's failure to seek payment was not misleading.

■ Plaintiff argues in its cross-appeal that it was entitled to prejudgment interest on the award for its freight charges, the amount of which were never in dispute. Plaintiff relies upon the following authority.

In *Transconex* (182 Ill. App. 3d at 897), the court held that prejudgment interest was generally awarded in claims for undercharges. In *Norfolk & Western Ry. Co. v. North American Car Corp.* (N.D. Ill. 1979), 455 F. Supp. 424, 426, the court awarded prejudgment interest in a suit for a common carrier's freight charges, without discussion of the issue. The court cited *Louisiana & Arkansas Ry. Co. v. Export Drum Co.* (5th Cir. 1966), 359 F.2d 311, 317, in which the court allowed prejudgment interest in a suit for freight charges on the basis that the amount in controversy was a sum certain and that the only way the wronged party could be made whole was to award him interest from the time he should have received the money.

Defendant argues that prejudgment interest is not a mandatory element of damages but is in the sound discretion of the trial court (see, *e.g.*, *Emmenegger Construction Co. v. King* (1982), 103 Ill. App. 3d 423, 429, 431 N.E.2d 738 (the trial court had discretion on the question of interest, according to the equities of the case, and interest would be allowed where such damages were liquidated or where they could be ascertained by simple and certain computation)). Defendant also cites authority that the decision to award prejudgment interest requires a balancing of the equities between the parties under the circumstances of the case. *Central States Trucking Co. v. Perishable Shippers Association* (N.D. Ill. 1991), 765 F. Supp. 931, 936.

Defendant also argues that the amount of the freight charges had been in dispute and that plaintiff reduced the amount of freight charges in its amended complaint. Another factor to be considered is that defendant consignee was never billed or even contacted by plaintiff carrier and did not receive notice of the unpaid freight charges until 34 months later, when a summons and a copy of the complaint were served on November 28, 1989.

Upon balancing of the equities between the parties under the

facts of this case, we affirm the denial of an award of prejudgment interest to plaintiff carrier.

Affirmed.

TULLY, P.J., and RIZZI, J., concur.