HILT TRUCK LINES, INC., A NEBRASKA CORPORATION, APPELLEE, V.
HOUSE OF WINES, INC., A FOREIGN CORPORATION, APPELLANT.

299 N.W.2d 767

Filed December 29, 1980. No. 42838.

Harvey B. Cooper of Abrahams, Kaslow & Cassman for appellant.

Michael O. Johanns of Peterson, Bowman & Johanns for appellee.

Heard before McCown and Boslaugh, JJ., and Colwell, Kneifl, and Whitehead, District Judges.

Whitehead, District Judge.

This appeal involves an action wherein the plaintiff-appellee, Hilt Truck Lines, Inc. (Hilt), brought suit against the defendant-appellant, House of Wines, Inc. (House of Wines), for the transportation charges to transport seven loads of Coors beer at an agreed upon consideration. House of Wines denied responsibility, except for one load, stating that the shippers of the goods were not its agents but were independent contractors, also that Hilt was estopped from collection from House of Wines, and therefore, House of Wines was not liable to Hilt for payment. The matter was tried to a jury and the jury found for the defendant and plaintiff's petition was dismissed. A motion for new trial and judgment notwithstanding the verdict was filed. The court, after hearing thereon, granted a judgment notwithstanding the verdict for four shipments, from which the defendant, House of Wines, appeals. We affirm.

Hilt is a common motor carrier operating throughout the United States under Interstate Commerce Commission authority, and the House of Wines is a beer and wine distributor in Washington, D. C. Among the beers that House of Wines sells to retailers in Washington, D. C., and vicinity is Coors beer. Because of its marketing policies, Coors will not ship directly to House of Wines, necessitating House of Wines to contract with independent Coors distributors in the western United States for the purchase and shipment of Coors beer to House of Wines or its designee. Western States Beverage was the principal shipper involved in this litigation.

The plaintiff, in its petition, proceeded under two theories of recovery, the first theory being that the defendant, through its agents, acts as consignor of the goods, and therefore was subject to pay the shipping charges, and the second theory was that the defendant also acts as consignee or receiver of the goods, and therefore was required to pay the shipping charges as consignee. Defendant's defense was based upon the theory that the bills of lading were marked "Prepaid" and therefore under the theory of equitable estoppel because the House of Wines relied on the markings on said invoices and paid the shipper directly, and that Western States Beverage was not an agent of the House of Wines. A trial was had on the matter and, at the conclusion thereof, the jury returned a verdict for the defendant, House of Wines, Inc. The motion for judgment notwithstanding the verdict and for a new trial was filed by the plaintiff, and after hearing thereon, the court found for the plaintiff as a matter of law on four of the six shipments sued under and entered a judgment notwithstanding the verdict. The defendant has appealed the judgment notwithstanding the verdict on the four shipments.

The first of the bills of lading in question was dated March 20, 1976. It shows that the consignor was House of Wines; Western States Beverage, agent. The consignee was House of Wines, care of J. W. Phillips & Sons, Richmond, Virginia. The shipment was for 2,000 cases of Coors beer, shipped from Silver City, New Mexico, to Richmond, Virginia. The federal basic permit number that the shipment was made under was the federal basic permit of the defendant, House of Wines, Inc. The shipment was received by the defendant on March 24, 1976.

The bill of lading of the second shipment shows that it was made on March 27, 1976, from Western States Beverage, agent, House of Wines, from Silver City, New Mexico, to the consignee, House of Wines, care of Northern Virginia Beverage in Alexandria, Vir-

ginia, for 2,000 cases of Coors beer. The shipment was received by the defendant on March 31, 1976. The bill of lading further shows that the shipment was to be prepaid and further that it was to be charged to Western States Beverage.

The bill of lading of the third shipment involved was dated March 30, 1976. The bill of lading shows that the consignor was Western States Beverage, agent, House of Wines. The consignee was House of Wines, Inc., Washington, D. C. It was for a shipment of 2,000 cases of Coors beer. The shipment was received April 6, 1976. The bill of lading indicates that it was prepaid.

The fourth shipment was shipped on April 6, 1976. The bill of lading states that the consignor is House of Wines, Western States Beverage, agent. The consignee is House of Wines in care of Northern Virginia Beverage in Alexandria, Virginia. It also was for 2,000 cases of Coors beer shipped from Silver City, New Mexico, to Alexandria, Virginia. It was shipped under the federal permit of defendant, House of Wines. There is no statement on the bill of lading as to whether it is prepaid or C.O.D., or whom to bill. The shipment was received by the consignee April 11, 1976.

The testimony shows that the first shipment of March 20 was paid by the defendant on March 19. The second shipment was paid for by the defendant on March 19, 1976. The third and fourth shipments were paid for with payments made March 23, 24, and 26. The defendant, in its testimony, stated that the payments made included freight to be paid by Western States Beverage. The plaintiff admitted that it had billed Western States Beverage prior to attempting to collect from the defendant, House of Wines.

The Interstate Commerce Commission regulations Hilt is required to operate under, particularly 49 U.S.C. § 323 (1976), provided in part: "No common carrier by motor vehicle shall deliver or relinquish possession at destination of any freight transported by it in interstate or foreign commerce until all tariff

rates and charges thereon have been paid, except under such rules and regulations as the Commission may from time to time prescribe to govern the settlement of all such rates and charges, including rules and regulations for weekly or monthly settlement, and to prevent unjust discrimination or undue preference or prejudice."

The courts have interpreted this provision as a statutory mandate enacted for the purpose of preventing discrimination in the credit treatment accorded shippers by carriers. See, *United States v. General Expressways, Inc.*, 270 F. Supp. 115 (D. Colo. 1967); *E. L. Murphy Trucking Company v. Climate Control, Inc.*, 523 P.2d 1224 (Utah 1974).

A carrier has under the law two sources from which to seek payment of shipping charges. The first source is the consignor, the one who shipped the goods and who is generally primarily liable, and the second is the one who received the goods, called the consignee. They both, as a matter of law, are liable for the shipping charges. See, 49 U.S.C. § 323 (1976); *Southern Pacific Company v. Miller Abattoir Company*, 454 F.2d 357 (3d Cir. 1972).

In the case at hand, the bills of lading state that the consignor in all four loads in question is Western States Beverage, agent, House of Wines, and the consignee in all four loads in question is the defendant, House of Wines. All shipments were made under the House of Wines federal basic permit. House of Wines defends as to its potential liability as a consignor that Western States Beverage was never acting as its agent and as a consignee, that the plaintiff is estopped by its conduct from collecting freight payments from House of Wines.

A short description of the development of the Interstate Commerce Act is appropriate at this point. Since the adoption of the Interstate Commerce Act on February 4, 1887, it was considered a matter of public policy that the Interstate Commerce Act demanded

that the carrier receive full payment in every case. The case of *Pittsburgh & c. Ry. Co. v. Fink*, 250 U.S. 577, 40 S. Ct. 27, 63 L. Ed. 1151 (1919), established the rule that regardless of contract, in equitable principles, a consignee who accepts delivery cannot avoid liability for freight charges. Further, see *L. & N. R.R. v. Central Iron Co.*, 265 U.S. 59, 44 S. Ct. 441, 68 L. Ed. 900 (1924). In a large number of cases subsequent thereto the courts consistently stated that, by the Interstate Commerce Act, Congress intended to impose absolute liability upon a consignee. Beginning with the case of *Missouri Pacific Railroad Co. v. National Milling Co.*, 276 F. Supp. 367 (D. N.J. 1967), *aff'd* 409 F.2d 882 (3d Cir. 1969), principles of estoppel were applied to bar a carrier from imposing a double payment upon a consignee that accepted delivery of a shipment under a uniform straight bill of lading marked "freight prepaid," and then reimbursing the consignor for the full amount of the freight charges in accordance with the separate agreement. By marking the bill of lading "prepaid," the carrier was held to have represented satisfaction with freight charges upon which the consignee reasonably relied in paying the same amount to the consignor. The leading case in this area is *Consolidated Freightways Corp. of Del. v. Admiral Corp.*, 442 F.2d 56 (7th Cir. 1971).

Inasmuch as the consignee of goods is liable as a matter of law for payment of the freight charges for goods delivered and accepted, the defendant, as consignee, must prove the facts sufficient to create an equitable estoppel to avoid liability.

To establish an equitable estoppel the defendant consignee must prove: that the plaintiff made a false representation or concealment of material facts with actual or constructive knowledge of such false representation or concealment; that the defendant consignee did not have the knowledge or means of knowledge that such facts were misrepresented; and that the

defendant consignee acted with reliance upon said facts to his prejudice. *Bastian v. Weber*, 150 Neb. 709, 35 N.W.2d 791 (1949); *Wiltse v. Bolton*, 132 Neb. 354, 272 N.W. 197 (1937).

In the case at hand, the four bills of lading in question from the plaintiff to the defendant for the goods shipped were all marked "Prepaid" or were not marked at all, which is recognized in the trade as meaning prepaid. The testimony further showed that the House of Wines did not have knowledge that Western States had not paid the shipping charges to Hilt Truck Lines. The testimony further shows, however, that all payments were made to Western States prior to receipt of the goods and bills of lading and, in several instances, payments were even made prior to shipping. Therefore, the defendant failed to prove that there was reliance upon the statements in the bills of lading, and therefore the court finds that, as a matter of law, the defendant is liable to the plaintiff for the four shipments in question as consignee.

Inasmuch as the defendant failed to carry the burdent of proof of an estoppel, it is liable as a matter of law as consignee in the matter and the court does not have to consider the separate question of whether or not it was also liable as consignor. The judgment of the District Court is affirmed.

AFFIRMED.