2016 UT App 30

## THE UTAH COURT OF APPEALS

ATLAS VAN LINES, INC. AND ACTION MOVERS, INC.,
Appellants,
*v.*
THE DINOSAUR MUSEUM, SYLVIA CZERKAS,
AND STEPHEN CZERKAS,
Appellees.

Memorandum Decision
No. 20140941-CA
Filed February 19, 2016

Seventh District Court, Monticello Department
The Honorable George M. Harmond
No. 130700004

Walter J. Bird and James A. Wescoe, Attorneys
for Appellants

Daniel G. Anderson, Attorney for Appellees

JUSTICE JOHN A. PEARCE authored this Memorandum Decision, in
which JUDGES J. FREDERIC VOROS JR. and MICHELE M.
CHRISTIANSEN concurred.[1]

PEARCE, Justice:

¶1     Atlas Van Lines, Inc. and Action Movers, Inc.
(collectively, Atlas) appeal from the district court's order

---

1. Justice John A. Pearce began his work on this case as a
member of the Utah Court of Appeals. He became a member of
the Utah Supreme Court thereafter and completed his work on
the case sitting by special assignment as authorized by law. *See
generally* Utah R. Jud. Admin. 3-108(3).

granting summary judgment to The Dinosaur Museum (the Museum), Sylvia Czerkas, and Stephen Czerkas.[2] We affirm.

¶2 The Museum, located in Blanding, Utah, owns and displays dinosaur fossils and related materials. In 2011, Science and Entertainment Strategies, LLC (S&E) contracted with the Museum to temporarily obtain and display a number of the Museum's exhibits as part of the "Dinosaurs Invade Atlantic City" exhibition at a casino in Atlantic City, New Jersey. S&E entered into a transportation services agreement with Atlas, a carrier of goods and property, to transport the exhibits. The Museum was not a party to the contract between Atlas and S&E.

¶3 The Museum agreed to allow S&E to use its exhibits, but it did not want to be responsible for the cost of shipping. Indeed, the Museum consistently and frequently expressed concern about the allocation of the exhibits' shipping costs. As part of the agreement between S&E and the Museum, S&E agreed to pay all shipping costs. The Museum also contacted Atlas several times to obtain assurances that it would not be on the hook for payment.

¶4 On June 13, 2011, several weeks before Atlas was scheduled to pick up the exhibits in Blanding, the Museum emailed Atlas seeking confirmation that S&E would be liable for

---

2. In its complaint, Atlas named Sylvia Czerkas and Stephen Czerkas as agents of the Museum. At oral argument, Atlas's counsel conceded that its claims were against the Museum alone and that Sylvia Czerkas—and, presumably, Stephen Czerkas— should not have been named in the complaint. We treat this appeal as a dispute solely between Atlas and the Museum.

the shipping expenses and that Atlas would not bill the Museum.[3] The June 13 email began,

> Would you please confirm that [Atlas] has a contract with [S&E] to transport exhibits from and to [the Museum] for the "Dinosaurs Invade Atlantic City" exhibition, and that the payment for these shipments will be made by [S&E] to [Atlas]. Please confirm that we will not receive a bill for these shipments, and that the Bill of Lading will show that [S&E] will pay directly for the shipments.

The email also included a list of instructions regarding shipping details. Atlas responded by email that same day, stating, "Yes, [S&E] has a contract and will be invoiced and responsible for the payment of these shipments." Thereafter, Atlas picked up the exhibits in Blanding and transported them to Atlantic City.

¶5 On September 1, while the exhibits were still in New Jersey, the Museum emailed Atlas again. This email stated, "This is to confirm the pick up date of the [S&E] show in Atlantic City for which they are responsible for all shipping costs according to your agreement with them. [The Museum] is not paying for the shipping, and has no agreement with you." Atlas apparently failed to respond to this email. On September 6, the Museum sent another email to Atlas. The September 6 email stated, in its entirety,

> Please confirm that your company will be paid directly by [S&E] for this shipment, and that you will be billing them for the shipping of the exhibit from Atlantic City to [the Museum].

---

3. The June 13 email indicated that the planned pickup date for the exhibits in Blanding was July 3.

> [The Museum] does not have a shipping agreement with you, and is not responsible for paying the shipping.
>
> The arrangements, schedules, and payment agreements, were made exclusively between [Atlas] and [S&E].

Sometime in September, Atlas responded simply, "Yes, [S&E] will be paying for the shipment from Atlantic City to [the Museum]."

¶6     Atlas picked up the exhibits in Atlantic City on September 11 and delivered them to the Museum in Blanding on September 17. Atlas would not release the exhibits to the Museum without signatures on two separate bills of lading. The Museum signed each bill, indicating on both that the signature was on behalf of S&E and directing Atlas to "Bill to: [S&E]."

¶7     Atlas sought but was unable to collect payment for the shipping costs from S&E. After obtaining a default judgment against S&E, and because it was unable to collect the shipping costs from S&E due to S&E's apparent insolvency, Atlas sought payment from the Museum. The Museum disputed its responsibility to pay the shipping costs, citing the prior email conversations as confirmation that it was not responsible for the costs of shipping the exhibits. The Museum also informed Atlas that it "would not have participated in the exhibit without assurance from [Atlas] that [the Museum] would in no way be responsible for any shipping costs, and would not be billed for them."

¶8     Atlas brought this suit against the Museum to recover its unpaid transportation costs. Both parties sought summary judgment. The district court entered summary judgment in favor of the Museum, ruling that the Museum was not a party to the shipping contract between Atlas and S&E, that Atlas could not recover on its theory of consignee liability, and that Atlas was

equitably estopped from recovering the shipping costs from the Museum. Atlas appeals.

¶9      Atlas argues that the district court erred in concluding that the Museum was not liable for payment of the shipping costs as a consignee.[4] Atlas also contends that the district court erred in finding that Atlas was equitably estopped from recovering from the Museum. Because we affirm the district court's grant of summary judgment premised on equitable estoppel, we need not address Atlas's argument concerning consignee liability.

¶10      The district court ruled that principles of equitable estoppel barred Atlas from recovering against the Museum. Whether the district court correctly applied the doctrine of equitable estoppel presents a mixed question of law and fact. *Iota, LLC v. Davco Mgmt. Co.*, 2012 UT App 218, ¶ 12, 284 P.3d 681. "Because the equitable estoppel inquiry is highly fact-sensitive, we properly grant the trial court's decision a fair degree of deference when we review the mixed question of whether the requirements of the law of estoppel have been satisfied in any given factual situation." *Id.* (citation and internal quotation marks omitted).

---

4. The parties agree that, in the realm of common-carrier law, a carrier of goods may generally seek payment for transportation services from two sources: the consignor that arranged for the shipment of goods or the consignee that received the goods. *See Hilt Truck Lines, Inc. v. House of Wines, Inc.*, 299 N.W.2d 767, 770 (Neb. 1980). They do not dispute that generally the consignor is primarily liable to the carrier for payment, while the consignee is only secondarily liable, *see id.*, and that "[t]hose default liability provisions can be modified by contract," *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949, 955 (9th Cir. 2008). In light of the parties' agreement, and our resolution of this matter on other grounds, we express no opinion on this articulation of common-carrier law.

¶11    Equitable estoppel requires (1) "a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted," (2) "reasonable action or inaction by the other party taken or not taken on the basis of the first party's statement, admission, act or failure to act," and (3) "injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act." *Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶ 14, 158 P.3d 1088 (citation and internal quotation marks omitted). The district court concluded that the Museum had established equitable estoppel against Atlas because the Museum had "reasonably relied on statements, admissions and actions by [Atlas], which [Atlas] later repudiated, to [the Museum's] detriment."

¶12    Atlas challenges the district court's findings with respect to the first and second elements of equitable estoppel. With regard to the first element, the district court found that the Museum's emails requesting Atlas's assurances that the Museum would not be billed for shipping expenses, along with Atlas's responses confirming that S&E would be responsible for shipping, constituted an admission or act that was inconsistent with Atlas's later claim that the Museum was liable for shipping costs. On appeal, Atlas seeks to recharacterize the emails and contends that its representations to the Museum "merely state that the primary responsible party for the freight charges is [S&E]" and that the emails "never expressly or implicitly eliminate[d]" the Museum's secondary responsibility. Thus, Atlas argues that its email statements are not inconsistent with its later attempt to hold the Museum responsible for payment on a theory of consignee liability.

¶13    The district court did not err in concluding that Atlas's claim that the Museum is responsible for payment is inconsistent with the earlier representations Atlas made to the Museum. In the June 13 email, the Museum asked Atlas to confirm that S&E was responsible for the shipping costs and that the Museum "will not receive a bill for these shipments." In the September

emails, the Museum sought confirmation that it "does not have a shipping agreement with [Atlas], and is not responsible for paying the shipping." In both instances, Atlas responded in the affirmative without qualification or reservation.[5] Further, in support of its motion for summary judgment, the Museum submitted an affidavit stating that "[a]ll oral conversations and emails between [the Museum] and [Atlas] were that [S&E] would be solely responsible for all shipping costs for the exhibits and [the Museum] would have no responsibility for the same." Atlas did not present an affidavit or other competent evidence contradicting the Museum's sworn statement.[6] Against this evidentiary record, Atlas has not established that the district court acted outside of its discretion in interpreting the emails as representations that the Museum was not responsible for the shipping costs and would not be billed even if S&E failed to pay.

¶14    To satisfy the second prong, the Museum must have taken "reasonable action or inaction . . . on the basis of" Atlas's email assurances. *See Youngblood*, 2007 UT 28, ¶ 14 (citation and internal quotation marks omitted). The district court determined

---

5. We agree with the Museum that Atlas is now trying to characterize its "Yes" as "Yes, unless S&E does not pay." This characterization is not reflected in the plain language of the emails. Atlas conceded at oral argument that its email statements represented an "incomplete response" to the Museum's confirmation requests "that was not prepared by somebody who is steeped in the vagaries of interstate freight charge jurisprudential authority." Although that may be true, it does not render Atlas's subsequent actions consistent with its earlier representations. Nor does it address the undisputed affidavit testimony about conversations in which Atlas represented that S&E would be solely responsible to pay for shipping.

6. Atlas did not submit any affidavit evidence to the district court, either in support of its own motion for summary judgment or in opposition to the Museum's.

that the Museum took reasonable action based on Atlas's assurances by accepting shipment of the exhibits and signing the bills of lading provided by Atlas's drivers. Atlas argues that because the Museum agreed to the shipment of the exhibits before some of the email communications occurred, the Museum did not act in reliance on these communications.

¶15    The record does not support Atlas's characterization of the facts. Atlas points us to shipping instructions included in the Museum's June 13 email as evidence that the Museum had already agreed to ship the exhibits with Atlas before Atlas confirmed that "Yes, [S&E] has a contract and will be invoiced and responsible for the payment of these shipments." But that same email indicated an initial shipping date of July 3, giving the Museum several weeks to cancel the shipment or make other arrangements if its concerns about being responsible for payment were not alleviated. Atlas does not argue that the Museum could not have changed or cancelled its shipping plans between June 13 and July 3. The Museum also presented an affidavit testifying that it would never have permitted Atlas to ship its exhibits if it had not received assurances that it would not be liable for payment. On this record, Atlas has not demonstrated that the district court erred in determining that the Museum relied on Atlas's assurances when it accepted its exhibits from Atlas and signed the bills of lading upon the exhibits' return.

¶16    Atlas has not met its burden of demonstrating that the district court erred, and the record is sufficient to support the district court's ruling that Atlas is equitably estopped from seeking payment from the Museum. We therefore affirm the district court's ruling that equitable estoppel bars Atlas from recovering from the Museum.

───────────