GUNNISON SUGAR CO. et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4744.   Decided February 20, 1929.   (275 P. 777.)

*Irvine, Skeen & Thurman,* of Salt Lake City, for plaintiffs.

*George P. Parker,* Atty. Gen., and *F. A. Trottier,* Asst. Atty. Gen., for defendants.

STRAUP, J.

This case involves a review of proceedings of the Industrial Commission, awarding compensation to an employee of the Gunnison Sugar Company for an injury sustained by him in the course of his employment. The United States Fidelity & Guaranty Company was the insurance carrier for the company. The award was made against both of them. The employee, in the course of his employment, was injured in his back, an injury to the lower vertebrae. No complaint is made as to the compensation awarded him for such disability. The commission, however, in addition to such compensation, also awarded the employee compensation for loss of his teeth. Complaint is made of that part of the award.

When the employee was injured in his back, the assistant superintendent of the sugar company immediately was informed of the injury and the circumstances thereof. Ap-

parently neither he nor the employee at the time thought the injury of much consequence; that it was a mere wrenching of the back. The employee laid off for about three days, and then went back to work. Because of pain in his back and the injury thereto, he was not able to do his work as theretofore. About ten days after the injury he consulted a physician at Gunnison, where the factory of the sugar company was located, and where the employee was employed. To that physician the employee explained the nature of the accident, and how and where he was hurt. The physician examined the employee, bandaged his back, and gave him treatment. The employee shortly thereafter went back to work, but was unable to do his work without pain to his back, and at intervals was required to lay off. The physician who first treated the employee moved from Gunnison to other parts of the state.

The employee continued his employment, but gradually grew worse. He thereupon consulted another physician, and told him of his pain in the back and described how he felt. That physician made no examination of him, except to inquire of the employee the nature of the pain and the extent of it. The employee did not say anything to that physician as to the injury to his back. That physician diagnosed the employee's condition as that of rheumatism which he told the employee was due to his teeth, and advised him to have all of them extracted. In obedience to such advice the employee went to a dentist and had all of his teeth extracted. They were all in good and in a healthy condition. The pain suffered by him was in no manner due to any condition of his teeth, nor to rheumatism. It was entirely due to the injury to his back. He paid the dentist $115 to have his teeth extracted and for plates. Thereafter he went back to work, but found his condition had not improved, and that he was still unable to do his work because of pain suffered by him, especially when lifting heavy objects. He thereupon consulted a clinic, where on examination it was found that he was suffering from a partial dis-

location of the sacro-iliac joint, and was there operated on and cured. He thereafter went back to work.

In addition to the compensation awarded the employee for the injury to his back and the disability occasioned thereby, the commission also awarded him $640 for loss of time, and for disfigurement on account of the extraction of his teeth, $115 paid the dentist and $22 for expenses necessarily incurred as an incident thereto, or a total of $777. It is that portion of the award of which complaint is made.

No complaint is made that the employee was negligent in seeking or employing the physician, who wrongly diagnosed the employee's condition as that of rheumatism. The employee testified that when he went to such physician he did not then know just what was the matter with him, just what was the cause of the pain in his back and from which he was then suffering. He was not informed by the first physician that there was an injury to the vertebrae or that his injury was serious. When he went to the second physician and described to him the nature of his pain and suffering, and was told that it was due to rheumatism occasioned by his teeth he then believed that to be true and did what he was told to do by such physician and had his teeth extracted. The second physician consulted by the employee was a regularly licensed physician and no claim is made that he was unskillful or not competent.

That in the course of his employment and through accidental means the employee sustained an injury causing a partial dislocation of the sacro-iliac joint, and that the nature and character thereof was not known or discovered by him until the examination at the clinic, is not disputed. The application for compensation and for an award was made within one year after the happening of the accident. The question thus is whether, under the circumstances, the loss sustained by the employee because of the extraction of his teeth may be attributable to the accident and injury

thereby sustained by him. Under our Compensation Act (Comp. Laws Utah 1917, § 3138, as amended by Laws Utah 1919, c. 63), the commission was authorized to allow compensation for disability, disfigurement, and loss of bodily function. By section 3147 (as amended) an employer, or his insurance carrier, in addition to other compensation, is also required to pay a reasonable sum for medical, nursing and hospital service, and for medicines, etc. Such obligation is an affirmative one on the part of the employer or his insurance carrier to provide and furnish an injured employee with such service. When the employer neglects or fails to do so, the employee may procure such service, and the employer or insurance carrier becomes liable for the reasonable value thereof. Schneider, Workmen's Comp. Law, p. 1231.

The assistant superintendent of the sugar company, under whose direction the employee worked, within a few minutes after the accident, was informed of it and the manner in which it occurred. He also knew that the injury necessitated intermittent periods of loss of time by the employee for several months. On the record it is also inferable that he knew that the employee had sought medical treatment and was being treated for his injury. No offer was made by the employer to furnish or provide the employee with any treatment. Apparently the employer was content with the treatment which the employee had procured. It also is inferable that the emloyer, while not knowing the exact nature of the injury, yet knew, whatever its character was, that it was not readily yielding to treatment. Still, no effort was made by the employer to furnish or provide the employee with other or different treatment.

On the record we do not say, nor do we think it justifiable to say, that there was any willful refusal or failure, or even any neglect, on the part of the employer to furnish or provide the employee medical or surgical treatment. It

is more reasonable to say that the employer knew that the employee had been injured and was being treated, and that the employer was content with the treatment. The assistant superintendent himself testified that the employee was under his supervision and direction; that prior to the injury the employee was a strong and able-bodied man, capable of doing and did all kinds of heavy work about the factory; that within a few minutes after the accident he saw and talked with the employee and learned how the accident happened; that the employee then complained of pain in his back, and felt sick, and laid off from work for three days. It was explained to the assistant superintendent by the employee, and by another employee who witnessed the accident, that as the injured employee was carrying a heavy plank across a beet flume he slipped and fell, striking his back against an iron rod. However, the superintendent did not, nor did the employee, then know the seriousness of the injury. The assistant superintendent testified that when the employee came back to work he was not able to work as theretofore; that he complained of pain in his back, and frequently laid off, until after the operation had been performed on him, and after he had fully recovered from the injury.

Had the employer furnished and provided the physician who wrongfully diagnosed the employee's condition as that of rheumatism, and because of negligence or unskillfulness of such physician the injury or condition of the employee was aggravated (without any negligence on the part of the employee) we think the employer under such circumstances would be liable therefor even though he had not been negligent in employing or furnishing the physician. *Farnon* v. *Silver King Mines Co.*, 50 Utah 295, 167 P. 675, 9 A. L. R. 248. In that case it was held that an aggravation of an injury of an employee resulting from negligence or unskillfulness of a physician furnished by the employer was attributable to the original injury resulting through the neg-

ligence of the employer, though the employer was not guilty of negligence in employing or furnishing the physician.

However, that was a case not under our Workmen's Compensation Act. But, as we think, for stronger reasons should the doctrine be applied under that act. And that seems to be the view taken by the courts under similar acts. *Booth & Flinn* v. *Cook*, 79 Okl. 280, 193 P. 36. We think the same rule applies where, under circumstances heretofore stated, the employee himself seeks or employs a physician to treat him for an injury sustained by him, unless the employee is negligent in employing, without the knowledge, consent, or acquiescence of the employer, an incompetent, negligent, or unskillful physician. Schneider, Workmen's Comp. Law, p. 1250; *Ross* v. *Erickson Const. Co.*, 89 Wash. 634, 155 P. 153, L. R. A. 1916F, 319; notes to cases, 11 N. C. C. A. 758.

So, though it be assumed that the physician who diagnosed the employee's condition as that of rheumatism was negligent or unskillful, or incompetent, and that in consequence thereof the employee's teeth were extracted, yet, inasmuch as no claim is made that the employee was negligent in seeking or employing such physician, the aggravated loss or condition of the employee so occasioned by the negligence or unskillfulness of such physician cannot be said to be due to an independent and intervening cause but must be held attributable to the accident resulting in injury which as a primary cause set in motion a train of events from which the aggravated condition resulted.

We thus are of the opinion that the award complained of was justified. It therefore is affirmed, with costs.

CHERRY, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.