2016 UT App 222

# THE UTAH COURT OF APPEALS

TONYA PETERSEN,
Petitioner,
*v.*
LABOR COMMISSION, UTAH STATE UNIVERSITY,
AND WORKERS COMPENSATION FUND,
Respondents.

Memorandum Decision
No. 20150423-CA
Filed November 3, 2016

Original Proceeding in this Court

Ronald Ball, Virginius Dabney, and Stony Olsen,
Attorneys for Petitioner

Ryan Andrus and Hans M. Scheffler, Attorneys for
Respondents Utah State University and Workers
Compensation Fund

JUDGE KATE A. TOOMEY authored this Memorandum Decision, in
which JUDGES STEPHEN L. ROTH and JILL M. POHLMAN concurred.

TOOMEY, Judge:

¶1     In this memorandum decision, we decide whether the
Utah Labor Commission erred in denying Tonya Petersen's
claim for the cost of cervical spine surgeries. We decline to
disturb the Commission's determination.


BACKGROUND

¶2     In 2010 and 2011, Petersen was an employee of Utah State
University. On December 6, 2011, Petersen and a student
"moved eight oak tables each weighing 94 pounds a distance of
approximately 20 feet" and then stacked four of them on top of

the other four. The following morning, Petersen started to feel pain "below her right scapula" and in her right arm. As the day progressed, her right arm began to feel numb, and the next day she had "complete numbness in her right arm."

¶3     Two days later, a cervical spine X-ray revealed "moderate to severe degenerative changes with decreased disc height [and] spurring." The treating doctor concluded that Petersen's symptoms were "suggestive of . . . radiculopathy . . . superimposed upon moderate to severe degenerative joint changes" in her lower neck vertebrae.[1] Over the next month, Petersen sought treatment for upper back and right arm pain and numbness, tingling, and weakness in her right hand. In January 2012, Petersen was diagnosed with "[n]eck and upper back strain" and the treating physician indicated that "most of her pain . . . is chronic arthritic pain." In February 2012, Petersen underwent an MRI that "revealed cervical spine disc bulges with impingement of the nerve roots and cervical cord as well as moderate to severe osteoarthritis" in her lower cervical and top thoracic vertebrae. Following the MRI, the treating physician concluded Petersen "need[ed] a spinal surgery evaluation."

¶4     Although we are unable to determine when, the record shows that Petersen filed a claim with Workers Compensation Fund (WCF). WCF requested that Petersen undergo a medical examination, which was conducted in May 2012. The medical examiner reviewed Petersen's health records, met with her, and concluded that surgery was appropriate because of "pre-existing

---

1. Radiculopathy "occurs when a nerve . . . is compressed or irritated where it branches away from the spinal cord" and is "commonly called a 'pinched nerve.'" *Cervical Radiculopathy (Pinched Nerve)*, American Academy of Orthopaedic Surgeons http://orthoinfo.aaos.org/PDFs/A00332.pdf [https://perma.cc/3W ZS-6DCX].

conditions" but that "none of [her] injuries were attributable to the industrial accidents."[2] Accordingly, WCF "denied [Petersen's] claim for work-related injur[ies] to her neck."

¶5 In July 2012, Petersen met with an orthopedic surgeon and "reported moderate ongoing neck and upper back pain." The surgeon's report indicates that Petersen knew WCF had denied her claim for a "work-related injury to her neck."

¶6 Petersen requested a hearing with the Commission to review her WCF claim. Before the hearing, on August 29, 2012, she had surgery on her cervical spine. Two days later, WCF filed an answer to Petersen's request for a hearing, denying liability for any benefits related to her cervical spine conditions.

¶7 After surgery, Petersen "reported continued and increased numbness and pain through the right arm which exceeded pre-op levels" and she had a second neck surgery in December 2012. In February 2013 the surgeon completed a "Treating Physician Medical Opinion Re Industrial Injury" form in which he opined that the December 2011 "industrial accident caused cervical spine injuries affecting the neck and upper extremities," that her treatment was "medically necessary," and that "future industrial medical care should include follow-up for two years and therapy to assist with improving function." The

---

2. In her briefing, Petersen implies that WCF initially approved the cervical spine surgeries in asserting that "all doctors who saw her prior to surgery concluded that the surgery was necessary to treat her conditions" and argues that the Commission should not "be allowed to retroactively decide what medical care is necessary after it has been performed." Petersen's argument is misleading because she suggests that WCF approved the surgeries and then later denied compensation. But the record does not support this claim.

surgeon later modified this opinion to indicate that the accident "was an aggravation" of a 2010 work-related injury.[3]

¶8     Petersen continued to experience neck pain and numbness in her right arm as well as increasing lower back pain. In August 2013, at WCF's request, another doctor performed a medical examination and concluded that Petersen "sustained an acute muscular strain with temporary aggravation of severe preexisting degenerative disc and facet disease as a result of the industrial injury," that "the majority if not all the symptoms she experienced after the industrial injury were . . . due to her sever[e] pre-existing arthritic condition," and that "there are no permanent physical impairments as a result of . . . [the] December 6, 2011 industrial accident[]."

¶9     An evidentiary hearing was held before an administrative law judge (ALJ) on March 5, 2014. Because the medical opinion of Petersen's surgeon conflicted with those of the medical examiners retained by WCF as to the medical cause of Petersen's condition, the ALJ ordered a medical panel evaluation.

¶10    A panel of three doctors—two orthopedic surgeons and a neurologist—examined Petersen in August 2014. The panel also reviewed the ALJ's Memorandum, Findings of Fact, and Interim Order, as well as 468 pages of medical records from various providers, including the two medical examiners retained by WCF. The panel unanimously concluded that Petersen "at most" suffered a cervical spine "strain/sprain resulting in *temporary*

---

3. In mid-June 2010, Petersen and a student moved some furniture at the university and the next day Petersen "awoke with low back pain." Two weeks later Petersen was diagnosed with a "left low back (lumbar-sacral) strain." Because the compensation at issue in this case arises from the December 2011 injury, we do not discuss the 2010 injury further.

*aggravation* of [her] pre-existing degenerative cervical spine disease." It further concluded that her primary injury from the December 2011 accident was a "right lower brachial plexus stretch/compression injury," *not* an injury to Petersen's cervical spine.[4] Symptoms of numbness and weakness in Petersen's right hand and forearm were the result of the brachial plexus injury. The panel indicated that the cervical spine strain or sprain that resulted from the December 2011 accident "reached medical stability on 1-31-12," that the "cervical spine surgeries dated August 28–29, 2012 and December 20–23, 2012 respectively were not medically necessary because the patient's work related injuries on 12-6-11 did not require cervical spine surgery," that "[a]ll other medical treatment due to [Petersen's] December 6, 2011 work injuries was necessary," and that no future medical care was necessary for those injuries.

¶11 After receiving the medical panel's evaluation, the ALJ issued findings and an order. The order noted the medical and procedural history of the case, including the medical panel's report, and concluded,

> A preponderance of the evidence demonstrates that [Petersen's] December 2011 industrial accident resulted in a right brachial plexus stretch/compression injury, which reached medical stability on April 27, 2012, and a cervical spine musculo-l[i]gamentous strain/sprain, which reached medical stability on January 31, 2012. A preponderance of the evidence further demonstrates that all *non-surgical* care used to treat

---

4. According to the panel, the "brachial plexus is a network of nerves formed chiefly by cervical nerves" in the lower cervical and top thoracic nerves. It "lies deep to the . . . collarbone . . . and supplies nerves to the shoulder, arm and hand."

    [Petersen's] December 6, 2011 industrial injuries
    was medically necessary.

(Emphasis added.)

¶12    With respect to whether surgery was medically necessary to treat Petersen's industrial injuries, the ALJ noted that Petersen's treating physicians and the medical panel agreed that the December 2011 accident "resulted in an industrial injury which caused upper right extremity numbness, weakness, and atrophy." Further, the treating physicians "based their treatment on reasonable medical judgment and information available," and this led to Petersen's two cervical spine surgeries. Because the treating physicians and the surgeon deemed surgery appropriate, the ALJ reasoned, the surgeries were necessary.

¶13    To reach this determination, the ALJ relied on the Commission's decision in *Pond v. La-Z-Boy*, No. 99-0700 (May 1, 2003), a case in which the respondent argued that surgery was unnecessary to treat the petitioner's injuries from an industrial accident. *Id.* at 1. There the Commission stated,

    [T]he need for prospective surgery must, out of necessity, be made on the basis of reasonable medical judgment and the information then available. . . . Consequently, not all medical treatment is successful and not all surgery will find the condition that prompted the surgery in the first place. But if well-founded medical opinion concludes that a particular medical treatment is required, that treatment will be considered "necessary" regardless of outcome.

*Id.* at 4. The ALJ concluded that, although the medical panel determined the cervical spine surgeries were unnecessary to treat Petersen's December 2011 industrial accident injuries, the

surgeries "were nonetheless medically necessary to treat [Petersen's] December 6, 2011 industrial injuries" because the surgeon based his care on the medical information available at the time of the surgeries. Accordingly, the ALJ ordered Utah State University and WCF to pay "all medical treatment for the December 2011 cervical sprain/strain" injury, including the expenses incurred by the August 29, 2012 and December 20, 2012 surgeries.

¶14 Utah State University and WCF moved for review by the Commission, arguing the ALJ erred in "awarding the cost of surgical treatment" for Petersen's cervical spine condition.[5] The Commission agreed that the ALJ's reliance on *Pond* was erroneous because in *Pond* the preponderance of the evidence, including the medical panel's determination, "supported that the surgery was necessary." In contrast, "the medical evidence in the present matter [did] not show that the surgeries on Ms. Petersen's cervical spine were necessary" to treat injuries resulting from the December 2011 work accident. Because the "[medical] panel's opinion [was] supported by the evidence in the record," including the pre-surgery determinations of WCF's medical examiners, and its "opinion on this point [was] based on a thorough, well-reasoned, impartial review of all of Ms. Petersen's relevant medical history," the Commission concluded that "the surgeries in question were not necessary to treat her work injuries" and Petersen was not "entitled to the cost of such surgeries." Accordingly, the Commission "modifie[d] the portion of [the ALJ's] decision pertaining to the award of medical expenses by denying Ms. Petersen's claim for the cost of the cervical spine surgeries performed in 2012." Petersen now petitions for judicial review.

---

5. Petersen's non-surgical treatment is not at issue and we do not address it.

ISSUE AND STANDARD OF REVIEW

¶15 Petersen contends the Commission erred by determining the cervical spine surgeries were not necessary to treat her injuries from the December 2011 accident and therefore not compensable under the Workers Compensation Act. An agency's application of "a legal standard to a set of facts unique to a particular case" presents "[a] mixed question of law and fact." *Murray v. Labor Comm'n*, 2013 UT 38, ¶¶ 33–34, 308 P.3d 461 (citation and internal quotation marks omitted). Where "the facts are not at issue" and "the ultimate question is the legal effect of the facts," the agency's decision is "law-like" and "warrants nondeferential review." *Id.* ¶ 40.

ANALYSIS

¶16 Petersen contends the Commission erred in determining that her cervical spine surgeries were unnecessary to treat her December 2011 industrial accident injuries. Specifically, she argues that, because she suffered a neck injury from the accident and later needed two neck surgeries, the injury medically caused the need for the surgeries, and the surgeries were therefore compensable. At oral argument on appeal, Petersen conceded the surgeries were not necessary to treat the temporary aggravation the accident caused, that the temporary aggravation was resolved prior to the surgeries, and that the surgeries were instead necessary to treat her preexisting condition. Nevertheless, Petersen maintains it does not matter whether the accident caused only a temporary injury, rather she argues "causation does not end because it's temporary . . . ; it goes on forever. It's lifetime medical provisions" and the treatment "attaches to [the] claim forever; [it is] lifetime medical care forever." But Petersen offers no support for this interpretation of the Workers' Compensation Act and indeed, it runs contrary to Utah law.

¶17    Section 34A-2-401 of the Utah Code provides that an employee who is injured "by [an] accident arising out of and in the course of the employee's employment" shall be recompensed for medical costs. Utah Code Ann. § 34A-2-401(1)(b)(i) (LexisNexis 2015). In *Allen v. Industrial Commission*, 729 P.2d 15 (Utah 1986), our supreme court clarified what injuries are compensable under this statute. There the court adopted a two-part test to determine whether an injury is compensable: the accident must be the legal cause and the medical cause of the injury. *Id.* at 25–26. Under the legal-cause prong, a claimant must show that the injury "arose out of or in the course of employment" or, if a claimant has a preexisting condition, the claimant "must show that the employment contributed something substantial to increase the risk he already faced in everyday life because of his condition."[6] *Id.* at 25. The medical-cause prong requires a claimant to "prove the disability is medically the result of an exertion or injury that occurred during a work-related activity." *Id.* at 27. "The purpose of the medical cause test is to ensure that there is a medically demonstrable causal link between the work-related exertions and the unexpected injuries that resulted from those strains." *Id.*

¶18    *Allen* makes clear that there must be a nexus between the accident and the injury for which treatment is sought. Only medical expenses for injuries resulting from an industrial accident are compensable. Requiring a nexus between the accident and injury "prevent[s] an employer from becoming a general insurer of his employees and discourage[s] fraudulent claims." *Id.*

¶19    In this case, five doctors concluded that Petersen's surgeries were unnecessary to treat an injury related to the

---

6. As the ALJ's order noted, legal causation is not contested in this case.

December 2011 accident but were necessary to treat preexisting conditions. The medical examination in May 2012, three months before the initial surgery, determined that "none of [Petersen's] injuries were attributable to the industrial accidents" and that surgery would be appropriate to treat only her preexisting conditions. In August 2013, another WCF medical examination determined that the December 2011 accident caused a "temporary aggravation of [a] severe pre-existing degenerative . . . disease" and that there were no "permanent physical impairments" from the December 2011 accident. Finally, a three-doctor medical panel appointed by the ALJ determined that the accident caused "at most" a cervical spine "strain/sprain resulting in temporary aggravation of [Petersen's] pre-existing degenerative cervical spine disease." (Emphasis omitted.) The panel further concluded that this "strain/sprain" was stable by the end of January 2012 and that the primary injury from the December 2011 accident was a "right lower brachial plexus stretch/compression," not an injury to Petersen's cervical spine. Indeed, Petersen conceded at oral argument on appeal that the surgeries were not performed to treat an injury caused by the accident.

¶20   Because the December 2011 accident did not medically cause the condition that required the cervical spine surgeries, the surgeries were not necessary to treat an injury "arising out of and in the course of the employee's employment" and are thus not compensable under sections 34A-2-401 and 34A-2-418. *See* Utah Code Ann. §§ 34A-2-401(1), -418(1) (LexisNexis 2015); *Allen v. Industrial Comm'n*, 729 P.2d 15, 24–25, 27 (Utah 1986). We therefore conclude the Commission did not err in determining that Petersen is not "entitled to the cost of such surgeries."

CONCLUSION

¶21   We conclude that the Commission did not err in determining that Petersen's surgeries were unnecessary to treat

an injury caused by the December 2011 industrial accident and therefore not compensable under the Workers' Compensation Act. Accordingly, we decline to disturb the Commission's decision.

———————