**2019 UT App 164**

## THE UTAH COURT OF APPEALS

GERALD BENGE,
Petitioner,

*v.*

CODY EKKER CONSTRUCTION, AUTO OWNERS INSURANCE
COMPANY, AND LABOR COMMISSION,
Respondents.

Opinion
No. 20180366-CA
Filed October 10, 2019

Original Proceeding in this Court

Richard R. Burke, Attorney for Petitioner

Mark R. Sumsion and Lori L. Hansen, Attorneys for
Respondents Cody Ekker Construction and Auto
Owners Insurance Company

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

MORTENSEN, Judge:

¶1 Gerald Benge injured his knee at work and ultimately underwent three surgeries. Due to a dispute regarding whether the latter two surgeries were medically caused by the work injury and whether any permanent impairment was attributable to the workplace incident, Benge filed a workers' compensation claim. In making his claim, Benge tried to sweeten his arguments by relying on *Gunnison Sugar Co. v. Industrial Commission of Utah*, 275 P. 777 (Utah 1929). However, the Utah Labor Commission denied Benge's claim. We decline to disturb the Commission's order.

BACKGROUND[1]

*The Work Injury and Three Surgeries*

¶2    In 2013, while working for Cody Ekker Construction (Employer), Benge was operating an excavator on a trailer ramp. When the ramp suddenly tilted, he quickly got out of the excavator onto the trailer and then jumped down from the trailer to the ground. When he landed, his right knee twisted, popped, and caused him immediate pain. Benge went to the emergency room and was diagnosed with a torn meniscus and a fracture of his tibial plateau. Soon after, a doctor performed surgery (First Surgery) in which he made small incisions, cleaned out dead and damaged tissue, removed part of the meniscus, and shaved off and reshaped part of the patella on Benge's right knee.[2] During the First Surgery, the operating doctor noted "some balled up tissue with some obvious partial tearing of the ACL . . . [which] was calcified representing probable older type tissue from an older pathologic type tear." Benge was not happy with the results of his treatment, however, so he requested a change of doctors and began seeing Dr. Holmstrom.

¶3    Over the next two years, Benge underwent two more surgeries on his right knee. In January 2014, as pain in Benge's knee persisted and after discussing the details of his knee with

---

1. A party seeking review of an agency order "bears the burden of demonstrating that the agency's factual determinations are not supported by substantial evidence and we state the facts and all legitimate inferences drawn therefrom in the light most favorable to the agency's findings." *ABCO Enters. v. Utah State Tax Comm'n*, 2009 UT 36, ¶ 2 n.1, 211 P.3d 382 (cleaned up).

2. In medical terms, the doctor performed an arthroscopic surgery with debridement, a partial meniscectomy, and a chondroplasty of the patella.

Dr. Holmstrom, Benge received a right knee ACL reconstruction (Second Surgery). Then, in March 2015, Dr. Holmstrom performed a total knee replacement (Third Surgery). Dr. Holmstrom opined that all Benge's knee problems were causally connected to the 2013 work injury. However, Employer's medical consultant, Dr. Green, evaluated Benge's injuries and partially disagreed with Dr. Holmstrom's conclusion. Dr. Green agreed that the injuries addressed in the First Surgery were causally connected to the 2013 work injury, but he concluded that the other knee problems addressed in the subsequent surgeries were preexisting and unrelated to the 2013 work injury.

*The Administrative Adjudication*

¶4 Benge then filed a claim for permanent total disability under the Utah Workers' Compensation Act,[3] and an administrative law judge (ALJ) held an evidentiary hearing. During the hearing, Employer admitted that Benge sustained a meniscus tear and tibial plateau fracture as a result of the 2013 incident—or in other words, Employer admitted that the First Surgery was compensable by workers' compensation. But Employer argued that Benge's ACL tear and conditions that led to the Second Surgery and Third Surgery were not related to the 2013 work injury, and thus not compensable.

¶5 Because of the doctors' contradictory opinions, the ALJ referred the medical issues to a medical panel (Panel).[4] The Panel

---

3. *See generally* Utah Code Ann. §§ 34A-2-101 to -1005 (LexisNexis 2018).

4. Rule R602-2-2(A) of the Utah Administrative Code requires an ALJ to utilize a medical panel where significant medical issues and one of the enumerated situations of conflicting medical opinions are involved. *Clean Harbors Envtl. Services v. Labor*

(continued…)

concluded that Benge's 2013 work injury did not medically cause the injuries addressed in the Second Surgery and Third Surgery. The Panel specifically reported that "neither the right tibial plateau fracture nor the lateral meniscal tear impacted or accelerated Mr. Benge's *other* right knee condition *in any degree*." (Emphasis added.)[5] The Panel also concluded that Benge's 2013 work injury reached medical stability by December 15, 2013, and did not result in permanent impairment.

¶6    After reviewing the Panel's reports, the ALJ adopted the Panel's medical conclusions. Benge argued, however, based on *Gunnison Sugar Co. v. Industrial Commission of Utah*, 275 P. 777 (Utah 1929), that his knee problems after the First Surgery were connected to the work-caused injuries, as a matter of law. The

---

(…continued)
*Comm'n*, 2019 UT App 52, ¶ 18, 440 P.3d 916. Here, Dr. Holmstrom's and Dr. Green's medical opinions were in direct conflict related to the causation of Benge's knee injuries addressed in his two subsequent surgeries.

5. The Panel visited the issue of medical causation three times. The first time, the Panel found that Benge "sustained an acute right knee injury, consisting of a lateral tibial plateau fracture and contusion . . . [and] a lateral meniscal tear." In a supplemental report, the Panel clarified its findings by stating that "[i]t is medically more probable than not that neither the right tibial plateau fracture nor the lateral meniscal tear significantly impacted or accelerated Mr. Benge's other right knee conditions." Finally, due to an objection regarding the use of the word "significantly," the Panel issued a final supplemental report in which it found that "neither the right tibial plateau fracture nor the lateral meniscal tear impacted or accelerated Mr. Benge's other right knee condition in any degree."

ALJ rejected Benge's argument, and explained that Benge's injuries related to his First Surgery "did not impact or accelerate [his] other knee conditions." Additionally, the ALJ explained that Benge's "preexisting knee conditions and treatment at all times based on the preponderance of the medical evidence and medical opinions have existed independently from" the 2013 work injury. The ALJ further found that "the evidence show[ed] that [Benge's] primary injury was not aggravated by medical or surgical treatment." Benge also argued that Employer was equitably estopped from denying compensability for the subsequent surgeries, but the ALJ rejected this argument as well, citing *Olsen v. Industrial Commission of Utah*, 776 P.2d 937 (Utah Ct. App. 1989).[6] Consequently, the ALJ denied Benge's claim regarding the Second Surgery, Third Surgery, and permanent impairment.

¶7     Benge then filed a motion for agency review, and the Commission issued an order agreeing with the ALJ's decision. In its order, the Commission noted the disagreement between Dr. Holmstrom's and Dr. Green's opinions as to the medical cause of Benge's injuries addressed in the Second Surgery and Third Surgery. The Commission further acknowledged that the ALJ adopted the Panel's conclusion that Benge's 2013 work injury warranted the First Surgery but not the subsequent surgeries. Moreover, the Commission specifically disagreed with Benge's argument that *Gunnison Sugar* applied to his situation. And the Commission stated that "a preponderance of the evidence shows the [2013] accident medically caused an injury that was separate from other pathology in Mr. Benge's right knee and unrelated to the [First Surgery] he received." Finally, the Commission explained that additional evidence supported the Panel's finding, including Dr. Green's opinion, MRI results, and the operative report following the First Surgery.

---

6. *See infra* ¶ 21.

¶8     Benge petitions for judicial review.

ISSUES AND STANDARDS OF REVIEW

¶9     There are two issues before this court.[7] First, Benge contends that the Commission erred in denying his claim because his subsequent surgeries were caused by the 2013 work injury, and he contends that under *Gunnison Sugar Co. v. Industrial Commission of Utah*, 275 P. 777 (Utah 1929) all his injuries are compensable, as a matter of law. "Because medical causation is a question of fact," *e.g.*, *Valdez v. Labor Comm'n*, 2017 UT App 64, ¶ 10, 397 P.3d 753, we review the Commission's finding that Benge's injuries addressed in the two subsequent surgeries were not medically caused by the 2013 work injury for substantial evidence, *see Provo City v. Utah Labor Comm'n*, 2015 UT 32, ¶ 8, 345 P.3d 1242. "Substantial evidence is that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *Utah Chapter of the Sierra Club v. Board of Oil, Gas, and Mining*, 2012 UT 73, ¶ 11, 289 P.3d 558 (cleaned up). "In conducting a substantial evidence review, we do not reweigh the evidence and independently choose which inferences we find to be the most reasonable." *Provo City*, 2015 UT 32, ¶ 8 (cleaned up). "Instead, we defer to [the Commission's] findings because when reasonably conflicting views arise, it is the [Commission's] province to draw inferences and resolve these conflicts." *Id.* (cleaned up). But "we review the law [the Commission] applied to these facts for correctness." *Id.* ¶ 17.

---

7. The Utah Administrative Procedures Act provides us the authority to review administrative decisions. Utah Code Ann. § 63G-4-403(2)(a) (LexisNexis Supp. 2019); *see also Utah Chapter of the Sierra Club v. Air Quality Board*, 2009 UT 76, ¶ 13, 226 P.3d 719.

¶10 Next, Benge contends that Employer is equitably estopped from denying coverage for the Second Surgery and Third Surgery because he detrimentally relied on Employer's approval and payment for the surgeries. "The issue of whether equitable estoppel has been proven is a classic mixed question of fact and law." *Iota, LLC v. Davco Mgmt. Co.*, 2012 UT App 218, ¶ 12, 284 P.3d 681 (cleaned up). "Because the equitable estoppel inquiry is highly fact-sensitive, we properly grant the [Commission's] decision a fair degree of deference when we review the mixed question of whether the requirements of the law of estoppel have been satisfied in any given factual situation." *Atlas Van Lines, Inc. v. Dinosaur Museum*, 2016 UT App 30, ¶ 10, 368 P.3d 121 (cleaned up).

ANALYSIS

¶11 Benge asserts that the Commission erred in its conclusions regarding medical causation and equitable estoppel. We disagree with him on both points.

I. Medical Causation

¶12 Benge contends that the Commission erred in denying his claim for workers' compensation benefits in connection with the two subsequent surgeries, asserting that both the Commission's finding of fact and application of the law were erroneous. Both of these arguments are unpersuasive for the following reasons.

A. Substantial Evidence

¶13 There is substantial evidence that Benge's injuries addressed by the Second Surgery and Third Surgery were neither medically caused by the 2013 work injury nor affected at all by the First Surgery. "[A] medical panel's report alone can be enough to conclude that a Commission's determination was supported by substantial evidence." *Valdez v. Labor Comm'n*, 2017

UT App 64, ¶ 22, 397 P.3d 753; *see also Hutchings v. Labor Comm'n*, 2016 UT App 160, ¶ 32, 378 P.3d 1273 ("[T]he medical panel's report alone provide[d] substantial evidence to support the Commission's medical causation determination."). Such is the case here.

¶14 The Panel addressed all three of Benge's surgeries and the conditions underlying them, and it concluded that the 2013 work injury did not cause or affect the other injuries addressed in the subsequent two surgeries "in any degree." Moreover, the ALJ explained that the Panel's findings indicated that the First Surgery did not necessitate the subsequent two surgeries because the conditions therein were preexisting and independent. This alone is sufficient for us to conclude that the Commission's decision was supported by substantial evidence. *See, e.g.*, *Valdez*, 2017 UT App 64, ¶ 22. However, the Commission's decision exceeded this standard because the Commission identified further evidence to support the Panel's determinations, including Dr. Green's opinion that was the same as the Panel's, MRI results from Benge's knee, and the operative report following the First Surgery in which the operating doctor noted calcification on Benge's partial ACL tear representing "an older pathologic type tear."

¶15 Benge argues that we should order the Commission to find that "Dr. Holmstrom connected his care to [Benge's] work injuries" and to "reverse the Commission's wrongful denial." However, Dr. Holmstrom's opinion is not dispositive. The key is not whether Dr. Holmstrom opined that the injuries were medically caused by the 2013 work injury or the First Surgery. The key is what the Panel, and ultimately the Commission, found to be the cause. And although Benge may have "competing medical theories, the Commission's conclusions were certainly supported by substantial evidence," which is dispositive as to our review of a finding of fact. *See Wallace v. Labor Comm'n*, 2019 UT App 121, ¶ 16 (cleaned up); *see also Olsen v. Industrial Comm'n of Utah*, 776 P.2d 937, 940 (Utah Ct. App.

1989) ("We do not deem the Commission's findings arbitrary and capricious simply because the Commission adopted the findings of the panel rather than those of the independent physicians." (cleaned up)). Accordingly, given the Panel's report and the additional evidence, we have no difficulty concluding that the Commission's finding of causation was supported by substantial evidence.

B.     Application of Law

¶16     The Commission's application of the law was correct. In *Allen v. Industrial Commission*, 729 P.2d 15 (Utah 1986), our supreme court set out a two-part test to determine whether work injuries are compensable: The accident must be both the legal cause and medical cause of the injury. *Id.* at 25–28. "*Allen* makes clear that there must be a nexus between the accident and the injury for which treatment is sought. Only medical expenses for injuries resulting from an industrial accident are compensable. Requiring a nexus between the accident and injury prevents an employer from becoming a general insurer of his employees and discourages fraudulent claims." *Petersen v. Labor Comm'n*, 2016 UT App 222, ¶¶ 18, 20, 385 P.3d 759 (holding that because the work accident "did not medically cause the condition that required the [subsequent] surgeries, the surgeries were not" compensable (cleaned up)). Here, the Commission properly applied the *Allen* test to Benge's injuries and surgeries in denying his claim.

¶17     Benge nevertheless argues that *Gunnison Sugar Co v. Industrial Commission of Utah*, 275 P. 777 (Utah 1929), applies to this case, but this argument misses the mark. In *Gunnison Sugar*, an employee suffered a back injury at work and was treated by a doctor, who later moved to another part of the state. *Id.* at 777. The employee then visited another doctor for his back, but the new doctor incorrectly diagnosed the employee and, in an effort to treat the work-related back injury, advised him to have all his teeth extracted, which the employee did through his dentist. *Id.*

The employee brought a workers' compensation claim and was awarded costs for his troubles. *Id.* at 779. In approving the commission's award, our supreme court explained that "the aggravated loss or condition of the employee so occasioned by the negligence or unskillfulness of such physician cannot be said to be due to an independent and intervening cause but must be held attributable to the accident resulting in injury which as *a primary cause* set in motion a train of events *from which the aggravated condition resulted*." *Id.* (emphasis added). Thus, in *Gunnison Sugar*, the work injury was the direct cause of the inappropriate and unfortunate removal of the employee's teeth because the teeth were removed in a misguided effort to treat the original work-related injury. *See id.*

¶18 Here, Benge's situation is wholly different from the employee's in *Gunnison Sugar* because the Second Surgery and Third Surgery were performed to treat conditions that were found to be unrelated Benge's work injury. As discussed above, the Panel found that Benge's 2013 work injury did not affect his other conditions "in any degree." Moreover, the ALJ explained that the First Surgery did not necessitate the subsequent surgeries because the injuries therein were preexisting and independent. Finally, the Commission concluded that the Second Surgery, Third Surgery, and their underlying injuries were independent and unrelated to the 2013 work injury and the First Surgery. Thus, the Commission's conclusion was the exact opposite from the one reached in *Gunnison Sugar*.

¶19 Simply put, Benge's reliance on *Gunnison Sugar* is misplaced because it does not apply to the facts of this case.[8] *Cf.*

---

8. Benge's argument that *Perchelli v. Utah State Industrial Commission*, 475 P.2d 835 (Utah 1970), applies to this case is unpersuasive for the same reason: *Perchelli* and this case are factually distinguishable. In *Perchelli*, the employee injured his lower back, sneezed two years later and thereby reinjured his

(continued…)

*Petersen*, 2016 UT App 222, ¶¶ 19–20 (holding that because the work accident "did not medically cause the condition that required the [subsequent] surgeries, the surgeries were not" compensable (cleaned up)). Therefore, the Commission correctly applied the law, and we decline to disturb its decision.

## II. Equitable Estoppel

¶20    Employer was not equitably estopped from denying compensability for Benge's two subsequent surgeries. To prevail on a claim of equitable estoppel, a party must establish three elements:

> (1) a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted; (2) reasonable action or inaction by the other party taken or not taken on the basis of the first party's statement, admission, act or failure to act; and (3) injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act.

*Howick v. Salt Lake City Corp.*, 2018 UT 20, ¶ 14, 424 P.3d 841. (cleaned up).

¶21    However, "the mere fact that an employer pays benefits initially without contesting liability does not mean it is thereafter, as a matter of law, barred from contesting liability." *Olsen v. Industrial Comm'n of Utah*, 776 P.2d 937, 940 (Utah Ct. App. 1989). Indeed, our supreme court has long stated that "in

---

(…continued)
back, and our supreme court held that the denial of his claim was erroneous. *Id.* at 836–38. Conversely, the findings here were that the injuries were preexisting, independent, and unrelated.

the absence of prejudice to the employee or of facts giving rise to estoppel, an insurance carrier may, notwithstanding voluntary payment of compensation, . . . urge the defense that the employee did not meet with an accident . . . or that there was no causal connection between the injury and disability." *Harding v. Industrial Comm'n of Utah*, 28 P.2d 182, 184 (Utah 1934). A rule to the contrary would result in more employers' contesting claims at the outset to avoid being estopped from raising arguments later, which would be problematic for employees, employers, and insurance carriers. *Olsen*, 776 P.2d at 941 (discussing the same policy concern).

¶22    Benge argues that Employer is "estopped from denying liability for [his] medical care and secondary injuries because [he] relied on [Employer's] irreversible medical care to his prejudice." The thrust of Benge's argument is that his surgeries are irreversible. His argument is unpersuasive because it does not establish the second and third equitable estoppel elements—reasonable reliance and detrimental injury. *See Howick*, 2018 UT 20, ¶ 14.

¶23    Benge has failed to prove that, in making the decision to undergo the Second Surgery and Third Surgery, he reasonably relied—or even relied at all—on Employer's payment for those surgeries. Benge had the surgeries after experiencing pain and discussing the details with Dr. Holmstrom. Thus, regardless of Employer's approval and payment, Benge and Dr. Holmstrom concluded that he needed the surgeries, and there is no evidence that Benge changed his position based on Employer's approval or payment for them. For the same reason, Benge has failed to prove that Employer's payment and approval of the surgeries were detrimental to him. Again, he needed the surgeries. Simply because the surgeries are irreversible does not make them detrimental. The fact that Employer initially paid for the surgeries was not detrimental to Benge; rather, it was in line with the public policy discussed above. *See Olsen*, 776 P.2d at 941. Therefore, despite Benge's bare assertions that Employer

should be estopped from denying compensability, he has not persuaded us that such is the case here.

CONCLUSION

¶24    We decline to disturb the Commission's order because it was adequately supported by substantial evidence, correctly applied the law, and properly denied Benge's equitable estoppel claim.

───────────