**2023 UT App 90**

## THE UTAH COURT OF APPEALS

HOSPITAL HOUSEKEEPING SYSTEMS AND SAFETY NATIONAL
CASUALTY CORPORATION,
Petitioners,
*v.*
LABOR COMMISSION AND LETICIA RUEDA VARGAS,
Respondents.

Opinion
No. 20220191-CA
Filed August 17, 2023

Original Proceeding in this Court

Brad J. Miller and Rachel M. Konishi,
Attorneys for Petitioners

Jose A. Loayza, Attorney for Respondent
Leticia Rueda Vargas

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JOHN D. LUTHY
concurred.

TENNEY, Judge:

¶1 In May 2017, Leticia Rueda Vargas injured her knee at work while employed by Hospital Housekeeping Systems (HHS).[1] HHS later refused to pay for some of Vargas's treatments, so Vargas filed a claim with the Labor Commission. During the ensuing litigation, an administrative law judge (the ALJ) ordered

---

1. The record contains references to both "Leticia Rueda Vargas" and "Leticia Vargas Rueda." The appellate briefing uses the former, so for purposes of this opinion, we'll refer to her as "Vargas."

HHS to cover "all future medical expenses necessary to treat" Vargas's injury. HHS did not challenge that order.

¶2      A few years later, HHS refused to pay for an injection that a doctor recommended as part of Vargas's ongoing treatment, claiming that Vargas's continued knee pain was not caused by the workplace accident. The ALJ disagreed and ordered HHS to pay for the injection, and the Labor Commission subsequently affirmed that decision. HHS now appeals. For the reasons set forth below, we decline to disturb that decision.

BACKGROUND

*The Work Injury & Early Treatment*

¶3      Vargas was employed by HHS as a housekeeper at Tooele Hospital. During a shift in May 2017, Vargas was changing the linens on a hospital bed when the bed suddenly rolled forward and hit the wall, causing the corner of the bed to impact Vargas's left knee. Vargas went to the emergency room later that day, where she presented with "a contusion, decreased range of motion, pain[] that is acute, swelling, [and] tenderness" in her left knee. A week later, Vargas returned to the emergency room and was diagnosed with an infected patellar bursa in her left knee.

¶4      Over the next several months, Vargas sought treatment for her ongoing knee pain from various providers, including physical therapists and orthopedic specialists. In November 2017, Vargas was evaluated by Dr. Mark Anderson, a medical consultant retained by HHS. Dr. Anderson concluded that "the work accident medically caused [Vargas's] traumatic pre-patellar bursitis in her left knee that had not reached medical stability."

¶5      Vargas continued receiving treatment for her ongoing knee trouble. In May 2018, Vargas had an MRI of her left knee, which revealed "grade 2 patellofemoral chondromalacia, trace joint

effusion," "[s]uperficial and deep infrapatellar bursitis," "[m]ild distal patellar tendinosis," and "[s]emimembranosus and pes anserine bursitis." These diagnoses had not been noted previously. In August 2018, a provider who had worked with Vargas since her injury opined that Vargas had now "failed all conservative treatment options." The provider recommended "a left knee shaving chondroplasty, synovectomy, and possible partial medial/lateral meniscectomy."

*Case 18-0680*

¶6      In October 2018, Vargas filed an application for a hearing with the Labor Commission (which was then captioned as case 18-0680) because of a dispute with HHS about its obligation to cover the costs of her ongoing treatment.

¶7      In January 2019, Vargas was evaluated by Dr. Anthony Theiler, another medical consultant retained by HHS. Dr. Theiler concluded that Vargas could "be deemed maximally medically improved as it relates to the incident in question." He further opined that "no further medical care was required and that [Vargas] had required treatment on an industrial basis only through mid-July 2017."

¶8      Given the conflicting evidence regarding causation, the ALJ referred the matter to a medical panel. *See* Utah Admin. Code R602-2-2; Utah Code § 34A-2-601; *Brown & Root Indus. Service v. Industrial Comm'n of Utah*, 947 P.2d 671, 677 (Utah 1997). In August of 2019, a medical panel consisting of Dr. Matthew Hughes and Dr. Jeremy Biggs evaluated Vargas and reviewed her claim. This panel subsequently provided a report in which it concluded that Vargas "ha[d] not reached MMI [maximum medical improvement], as she would likely benefit from additional conservative measures, or may benefit from a surgical excision of

the chronically inflamed bursa."[2] The medical panel recommended that Vargas see Dr. Travis Maak, an orthopedic surgeon, based on his conservative treatment approach. In a later follow-up, the medical panel noted that "[i]n some cases, recalcitrant chronic knee bursitis may be treated with surgery to remove the bursa (excision of bursa, bursectomy)."

¶9     Vargas followed the medical panel's recommendation and met with Dr. Maak in December 2019 for an evaluation. In his progress notes from that visit, Dr. Maak noted that he believed "a non-operative approach" to treatment of Vargas's left knee was "the best option," but he also recognized "the potential need for arthroplasty in the future." Vargas subsequently continued receiving treatment from Dr. Maak.

¶10    In July 2020, the ALJ issued a decision in case 18-0680 in which she found that Vargas's "industrial accident was the medical cause of a left knee contusion and an injury to the patellar bursa of the left knee, which remained symptomatic." The ALJ also found that Vargas's industrial accident met the standard for legal causation. The ALJ awarded Vargas coverage for "all future medical expenses necessary to treat [her] May 4, 2017, industrial injuries, including evaluation by an orthopedic surgeon." HHS did not appeal or administratively challenge that decision.

---

2. By "MMI," the medical panel was likely referring to "maximum medical improvement," which is a common term used in disability claims. *See, e.g.*, *Massengale v. Labor Comm'n*, 2020 UT App 44, ¶ 7, 462 P.3d 417; *see also Macy's Southtowne Center v. Labor Comm'n*, 2019 UT App 148, ¶ 20, 449 P.3d 998 (noting that MMI is understood to be "the date that the period of healing has ended and the condition of the claimant will not materially improve" (quotation simplified)).

*Case 20-0785*

¶11    Sometime after the decision was issued in case 18-0680, Dr. Maak opined that Vargas "ha[d] reached MMI at this time." Vargas continued receiving treatment from Dr. Maak, however, and in November 2020, Dr. Maak noted that Vargas

> was seen in my office today for a scheduled appointment to follow up her ongoing knee pain. Upon review at her appointment today, it was decided that we would not proceed with another cortisone shot as she did not get relief with it but instead we will try and get a Synvisc One injection approved with workers compensation and see if she gets better relief with that.

After HHS refused to pay for the Synvisc injection, Vargas filed another application with the Labor Commission, which was captioned as case 20-0785.

¶12    In April 2021 (and apparently at the request of HHS), Dr. Theiler revisited his 2019 evaluation. Although Dr. Theiler had not met with Vargas a second time, he reviewed her updated medical records and issued an amended report in which he opined that "there is absolutely no basis for any further treatment for an anterior left knee contusion." A few months later, HHS sent Dr. Maak a copy of Dr. Theiler's amended report with a cover sheet that asked Dr. Maak to choose "yes" or "no" in response to the question: "After reviewing Dr. Theiler's opinion, do you agree that [Vargas's] underlying degeneration is not related to the work event of May 4, 2017?" Dr. Maak marked "yes." Dr. Maak then wrote a letter of his own, in which he stated that "[t]he fact that [Vargas] has continued pain for over two years after the initial injury suggests that her current symptomology is likely unrelated to the original accident."

¶13   In August 2021, the ALJ held a hearing for case 20-0785 at which Vargas and HHS presented arguments about whether HHS should pay for the Synvisc injection. In September 2021, the ALJ issued an order resolving the dispute. With respect to the causation question, the ALJ held that the prior causation adjudication from case 18-0680 was the "law of the case" here. The ALJ said that she was

> at a loss to understand why [HHS] has engaged Dr. Maak in a discussion of medical causation and retained Dr. Theiler to reiterate his opinions regarding medical causation. The Court has already ruled that [Vargas's] left knee injury is industrially caused, and that ruling has not been overturned. If the Court erred by failing to state explicitly that the injury included both chondromalacia and bursitis as found on [the] MRI, the Court corrects that error now. There has been no significant change in circumstances that would justify review of [Vargas's] award of benefits in this matter.

In an apparent reference to Dr. Maak's plan for a Synvisc injection, the ALJ then ordered HHS to "pay for [Vargas's] continued care with Dr. Maak or other orthopedic surgeon," and she further ordered that if "conservative care fails to improve [Vargas's] left lower extremity functionality and her chronic pain, [HHS] shall pay for surgery as recommended by [Vargas's] orthopedic surgeon."

¶14   HHS petitioned for review with the Labor Commission. In January 2022, the Labor Commission issued an order affirming the ALJ's decision. Consistent with the approach taken by the ALJ, the Labor Commission ruled that the prior medical panel's "opinion on the extent of [Vargas's] work injury was adopted by" the ALJ in the earlier case "and represents the law of the case." The Labor Commission further concluded that case 18-0680's

"award of future medical care became a final order of the [Labor Commission], which represents the law of the case in this matter." And the Labor Commission agreed with the ALJ that HHS's "attempt to reopen the issue by offering a reiterated opinion from Dr. Theiler and an opinion from Dr. Maak regarding medical causation [did] not warrant a change in the award of benefits to [Vargas] from case number 18-0680." The Labor Commission accordingly "concur[red]" with the ALJ's "order in the present matter outlining the award of benefits to [Vargas] for her work-related left-knee injury."

¶15   HHS now seeks judicial review of the Labor Commission's decision.

## ISSUES AND STANDARDS OF REVIEW

¶16   HHS first argues that the Labor Commission had an insufficient basis for ordering it to pay for Vargas's ongoing treatments for her knee injury. HHS suggests that its challenge is legal in nature, but as explained below, we view HHS's argument as being factual in nature. As a result, we review it "under the substantial evidence standard of review, examining the whole record to determine whether a reasonable mind might accept as adequate the evidence supporting the decision." *Quast v. Labor Comm'n*, 2017 UT 40, ¶ 15, 424 P.3d 15 (quotation simplified).

¶17   HHS next argues that the Labor Commission lacked authority to order "benefits not requested by" Vargas in the most recent case—namely, anything beyond a Synvisc injection. To the extent that HHS is challenging the Labor Commission's authority to order this particular remedy, this challenge presents a legal question that is reviewed for correctness. *See White v. Labor Comm'n*, 2020 UT App 128, ¶ 11, 474 P.3d 493.

ANALYSIS

¶18    A Utah employee must be compensated for an injury "arising out of and in the course of the employee's employment, wherever such injury occurred, if the accident was not purposely self-inflicted." Utah Code § 34A-2-401(1). "[A]n employee is entitled to be compensated for a medical expense" if the "medical expense is[] (A) reasonable in amount . . . and (B) necessary to treat the industrial accident." *Id.* § 34A-2-417(1)(a)(i). "[T]here must be a nexus between the accident and the injury for which treatment is sought." *Petersen v. Labor Comm'n*, 2016 UT App 222, ¶ 18, 385 P.3d 759.

¶19    HHS challenges the Labor Commission's decision on two grounds: first, HHS argues that there was an insufficient basis for concluding that Vargas's workplace accident caused her ongoing knee pain; and second, HHS argues that the Labor Commission should have limited its ruling to an order of payment for the Synvisc injection.

I. Causation

¶20    HHS first argues that because it presented evidence from Drs. Theiler and Maak suggesting that Vargas's workplace accident had not caused her ongoing knee pain, and because Vargas presented no contrary evidence in case 20-0785, the Labor Commission "had no other choice but to deny the request for the [S]ynvisc injection and related medical care." We disagree for several reasons.

¶21    First, the Labor Commission regarded HHS's arguments as an attempt to reargue the question of whether Vargas was injured. So viewed, and echoing a similar decision from the ALJ earlier, the Labor Commission concluded that the causation determination from case 18-0680 constituted the "law of the case" on that same question for case 20-0785. This application of the law

of the case doctrine appears to have been the primary basis for the Labor Commission's decision on causation.

¶22 But HHS does not meaningfully challenge this in its opening or reply brief—indeed, the phrase "law of the case" does not even appear in either of its briefs. This matters. After all, appellate courts "will not reverse a ruling of [a lower tribunal] that rests on independent alternative grounds where the appellant challenges only one of those grounds." *Howick v. Salt Lake City Corp.*, 2018 UT 20, ¶ 11, 424 P.3d 841 (quotation simplified); *see also Kendall v. Olsen*, 2017 UT 38, ¶ 9, 424 P.3d 12 (concluding that because the appellant "failed to challenge . . . an independent basis for the dismissal of the case," the supreme court had "no choice except to affirm"); *Gines v. Edwards*, 2017 UT App 47, ¶ 32, 397 P.3d 612 (concluding that the appellant did not carry his burden when he failed to address "the primary basis for the trial court's decision" until his reply brief (quotation simplified)). Given HHS's failure to challenge the primary basis for the decision at issue, this, alone, provides a basis for rejecting its request for relief.[3]

¶23 Second, even if we put aside the potential law of the case implications of the prior rulings, HHS would still not be entitled to relief because there was sufficient evidence to support the Labor Commission's decision.

¶24 In its brief, HHS claims that the "Labor Commission committed *legal error* by finding that [HHS] must pay for any new,

---

3. The parties haven't provided us with any briefing on the extent to which the law of the case doctrine does (or perhaps doesn't) apply in a subsequent administrative proceeding stemming from the same workplace accident. For purposes of this appeal, however, and given the briefing failure identified above, we simply assume that it does and that it thus provides a basis for affirming the causation ruling in question.

different, and ongoing medical care in perpetuity . . . without any further recourse to dispute the treatment." (Emphasis added.) While HHS suggests that its challenge is a legal one, its arguments focus on whether the Labor Commission had a sufficient basis for deciding that the workplace incident actually caused Vargas's ongoing knee pain. But it's well settled that causation questions of this sort are factual in nature, not legal in nature. *See, e.g.*, *YESCO v. Labor Comm'n*, 2021 UT App 96, ¶ 13, 497 P.3d 839 ("[W]hether the Commission properly found that medical causation exists is a question of fact . . . ."); *Morris v. Labor Comm'n*, 2021 UT App 131, ¶ 12, 503 P.3d 519 (same); *Benge v. Cody Ekker Constr.*, 2019 UT App 164, ¶ 9, 451 P.3d 667 ("Medical causation is a question of fact . . . ." (quotation simplified)); *Fogleman v. Labor Comm'n*, 2015 UT App 294, ¶ 38, 364 P.3d 756 ("Whether medical causation has been established is an issue of fact . . . .").

¶25 Because of this, we review the causation determination at issue for "substantial evidence." *Provo City v. Labor Comm'n*, 2015 UT 32, ¶ 8, 345 P.3d 1242. When employing this standard, we "examin[e] the whole record to determine whether a reasonable mind might accept as adequate the evidence supporting the decision." *Quast v. Labor Comm'n*, 2017 UT 40, ¶ 15, 424 P.3d 15 (quotation simplified). Moreover, we "do not reweigh the evidence and independently choose which inferences we find to be the most reasonable." *Benge*, 2019 UT App 164, ¶ 9 (quotation simplified). Instead, we defer to the Labor Commission's findings "because when reasonably conflicting views arise, it is the Labor Commission's "province to draw inferences and resolve these conflicts." *Id.* (quotation simplified).

¶26 HHS's initial problem is that it has not marshaled the supporting evidence. "To aid the appellate court in conducting a whole record review, the party challenging the factual findings must marshal all of the evidence and demonstrate that, despite the facts supporting the decision, the findings are not supported by substantial evidence." *Quast*, 2017 UT 40, ¶ 19 (quotation

simplified). "While an appellate court is not required to assume that the record supports the findings of the fact-finder in the absence of marshaling, it may do so at its discretion." *Id.* In the absence of proper marshaling, an appellate court will commonly conclude that the appellant has failed to carry its burden of persuasion. *See, e.g.*, *Horning v. Labor Comm'n*, 2023 UT App 30, ¶ 31, 529 P.3d 352. In its briefs, HHS made only a fleeting reference to some of the findings from the Labor Commission (as well as those of the ALJ). But HHS ignored and did not marshal large portions of the record that supported the causation determination in question. We can reject its challenge for this reason alone.

¶27 In any event, even putting this marshaling failure aside, we would still uphold the Labor Commission's decision because there was substantial evidence to support the conclusion that the workplace incident caused Vargas's ongoing knee pain. In the ruling at issue, the Labor Commission accepted and relied on the records from the separately captioned prior administrative case (case 18-0680) that Vargas had filed based on this same workplace incident. HHS has not argued that those records were not admissible in this case too. Those records included the following:

- emergency room progress notes from the day of Vargas's injury where she was "found to have a left knee contusion, acute decreased range of motion, swelling, and tenderness," and a follow-up note from a doctor that identified these injuries as "work-related";

- a November 2017 independent medical evaluation by Dr. Anderson, where he diagnosed Vargas with "traumatic [prepatellar] bursitis of the left knee" with "no relevant pre-existing conditions" and noted that the "bursal findings on [his] examination" were "the result of the accident";

- a May 2018 MRI that showed "grade 2 patellofemoral chondromalacia, trace joint effusion," "[s]uperficial and deep infrapatellar bursitis," "[m]ild distal patellar tendinosis," and "[s]emimembranosus and pes arsine bursitis";

- records showing that after the May 2018 MRI, Vargas had a steroid injection and was prescribed oral steroids for her knee pain, but then indicating that "[n]either treatment appears to have been effective";

- a report from the physician assistant who provided the steroid injection noting that Vargas had "failed all conservative treatment options" and recommending "a left knee shaving chondroplasty, synovectomy and possible partial medial/lateral meniscectomy";

- a January 2019 progress note that described Vargas's knee condition as "steadily worsening";

- a September 2019 medical panel opinion concluding that Vargas's industrial accident had "resulted in a significant contusion and patellar bursa injury," noting that Vargas had "not responded to conservative measures over the course of time since the industrial accident," and highlighting a recommendation for possible surgical intervention;

- a subsequent medical panel opinion that if "bursitis persists despite treatment," a steroid injection "may be performed for short-term relief" and that "[i]n some cases, recalcitrant chronic knee bursitis may be treated with surgery to remove the bursa";

- a progress note from Dr. Maak's initial visit with Vargas, where he noted that while he believed "a non-operative approach" to treatment of Vargas's left knee was "the best

option," he also recognized "the potential need for arthroplasty in the future"; and

- a December 2020 progress note from Dr. Maak reporting that Vargas's "last cortisone shot was ineffective."

Summing these records up, the Labor Commission therefore had a basis for finding, among others, that Vargas had "no relevant pre-existing conditions" before the workplace incident, that the incident caused "traumatic bursitis," tendinosis, and other internal damage to her knee, and that subsequent steroid injections and other conservative treatment measures had not yet resolved her ongoing pain.

¶28   Despite all this, HHS focuses on the fact that Drs. Theiler and Maak have recently concluded that Vargas's ongoing pain was not caused by the accident. But as noted, Dr. Theiler's opinion was that Vargas's injury had resolved itself *by July 2017*. This opinion is at odds with the conclusion of the many care providers detailed above (and the medical panel too) who concluded that Vargas's condition had not been resolved by that time. And while Dr. Maak believed that Vargas's accident-related pain has been resolved, that opinion does not seem to be shared by other providers.

¶29   Again, when "conducting a substantial evidence review, we do not reweigh the evidence and independently choose which inferences we find to be the most reasonable." *Benge*, 2019 UT App 164, ¶ 9 (quotation simplified). "Instead, we defer to the [Labor Commission's] findings because when reasonably conflicting views arise, it is the [Labor Commission's] province to draw inferences and resolve these conflicts." *Id.* (quotation simplified). Even accounting for the contrary views of Drs. Theiler and Maak, there is substantial evidence to support the conclusions that there is a causal link between Vargas's industrial accident and her knee injury and that Vargas still suffers from ongoing pain that was

caused by this accident and hasn't yet been resolved by any prior treatment. We accordingly reject HHS's challenge to the Labor Commission's determination that the workplace accident caused Vargas's ongoing knee pain.

## II. Remedy

¶30    In what we understand to be a reference to Dr. Maak's plan for a Synvisc injection, the ALJ ordered HHS to "pay for [Vargas's] continued care with Dr. Maak or other orthopedic surgeon," and the ALJ further ordered that if "conservative care fails to improve [Vargas's] left lower extremity functionality and her chronic pain, [HHS] shall pay for surgery as recommended by [Vargas's] orthopedic surgeon." The Labor Commission subsequently "concur[red]" with the ALJ's "order in the present matter outlining the award of benefits to [Vargas] for her work-related left-knee injury."

¶31    HHS now points out that in her hearing application, Vargas only requested a Synvisc injection. Because of this, HHS argues that, even if causation was established, the order should not have gone any further.[4] We have no need to rule on this issue. An "issue is not ripe if there exists no more than a difference of opinion regarding the *hypothetical application of a provision* to a situation in which the parties might, at some future time, find themselves." *Archuleta v. State*, 2020 UT 62, ¶ 37, 472 P.3d 950 (emphasis in original, quotation otherwise simplified). Here, the order in question did not require HHS to pay for surgery. Rather, it ordered HHS to pay for surgery *if* surgery is recommended by

---

4. Though somewhat unclear, HHS does not appear to be arguing that, if causation was properly established, HHS should not be obligated to pay for the Synvisc injection. Regardless, because we concluded above that causation was properly established, we would decline to disturb the Labor Commission's conclusion that HHS must pay for this injection to treat Vargas's injury.

Vargas's orthopedic surgeon. No party has informed us that Vargas has requested payment for surgery, let alone that a surgeon has recommended surgery. We therefore have nothing on this front to review.

¶32   In any event, given HHS's history of opposing Vargas's requests for treatment, we think it appropriate to note that, to the extent that HHS's claim turns on Vargas's failure to request payment for surgery in case 20-0785, this argument is misplaced. As the Labor Commission correctly pointed out, the final order from case 18-0680 already established HHS's liability "for all future medical expenses necessary to treat [Vargas's] May 4, 2017, industrial injuries, including evaluation by an orthopedic surgeon." And that same final order also required HHS to pay for "future medical care recommended by the panel, which was medical care by an orthopedic surgeon to oversee a comprehensive treatment plan for additional conservative measures and possible surgical intervention." Of note, HHS never challenged that decision. Thus, Vargas doesn't need a new administrative decision to entitle her to compensation for "future medical expenses necessary to treat" her injuries—she already has an unchallenged order that entitles her to this. If Vargas at some future point requests compensation for surgery, she will be entitled to compensation for that surgery under the terms of that order if she is able to show that surgery is "necessary to treat" her ongoing knee pain.

CONCLUSION

¶33   The Labor Commission had substantial evidence to support its conclusion that the workplace accident caused Vargas's injury and ongoing knee pain. From this, there was a proper basis to order HHS to pay for a Synvisc injection. We accordingly decline to disturb the Labor Commission's decision.

_____